## THOMAS WALTON v. SARAH E. CAMPBELL.

FILED JUNE 3, 1897. No. 7369.

1. **Appeal from County Court.** From the mere fact that there was filed in the district court a copy of a petition and an answer entitled in the county court and indorsed as therein filed, it will not be assumed that there was a judgment in, or an appeal from, such county court.

2. **Action for Breach of Covenant of Warranty: DAMAGES.** In an action for breaches of covenants of warranty in a deed for the conveyance of real property, while there may be a recovery for costs and attorneys' fees incurred but not paid in making a defense against an action hostile to the title purported to be conveyed by the warranty deed, this principle should not be extended to cover interest on such attorneys' fees and costs under the proofs made in this case.

3. ——: ——: **EVIDENCE.** Where a cause has been tried in the district court on the theory that an averment of eviction under a title paramount has been sufficiently established by proof of a yielding to such asserted title by purchase of the adversary interest, this court, while it may accept that theory, will not extend its operation so as to countenance an assumption that the yielding was earlier than the date of the quitclaim deed obtained by purchase of the paramount title.

4. **Covenants of Warranty.** Covenants of warranty not broken when made, pass with the title, unaffected by the fact that the conveyances are by quitclaim deeds.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.  *Affirmed upon filing remittitur.*

The facts are stated in the opinion.

*Ricketts & Wilson,* for plaintiff in error:

The warrantor did not have sufficient notice of the pending action, and is not bound by the adjudication. (Rawle, Covenants [ed. 1887], secs. 119, 120; *Somers v. Schmidt,* 24 Wis., 417; *Paul v. Witman,* 3 W. & S. [Pa.], 410; *Davis v. Wilbourne,* 1 Hill [S. Car.], 27.)

As the law does not grant a recovery for a contingent liability, no interest is recoverable unless *mesne* profits have actually been paid to the holders of the paramount title.  (*Cheney v. Straub,* 35 Neb., 526; Rawle, Covenants [ed. 1887], sec. 196; *Burton v. Reeds,* 20 Ind., 91; *Wacker v. Straub,* 88 Pa. St., 32; *Hutchins v. Roundtree,* 77 Mo., 500.)

Expenses of defending the ejectment suit cannot be recovered except upon proof that they were incurred after due notice was given to guarantor of the pendency of that suit, and an opportunity to defend tendered him. (*Mercantile Trust Co. v. South Park Residence Co.,* 22 S. W. Rep. [Ky.], 314.)

Notice to warrantor of a suit for eviction should be in writing.  (*Gilbert v. Turnpike Co.,* 3 Johns. Cases [N. Y.], 108; *In re Cooper,* 15 Johns. [N. Y.], 533; *Mason v. Kellogg,* 38 Mich., 132; Rawle, Covenants [ed. 1887], sec. 119.)

*Pound & Burr, contra:*

The covenant of warranty ran with the land, and Mrs. Campbell could sue upon it. (*Moelle v. Sherwood,* 148 U. S., 21; *Kyle v. Kavanaugh,* 103 Mass., 356; *Baylor v. Scottish-American Mortgage Co.,* 13 C. C. A., 659; *Rego v. Van Pelt,* 65 Cal., 254; *Flaniken v. Neal,* 67 Tex., 633; *Saunders v. Flaniken,* 77 Tex., 662; *Jenks v. Quinn,* 137

N. Y., 223; *Beddoe v. Wadsworth*, 21 Wend. [N. Y.], 120; *Brady v. Spurck*, 27 Ill., 478; *Thomas v. Bland*, 91 Ky., 1; *Scoffins v. Grandstaff*, 12 Kan., 467; *Brown v. Staples*, 28 Me., 502; *Gunter v. Williams*, 40 Ala., 561; *Redwine v. Brown*, 10 Ga., 311; *Mygatt v. Coe*, 142 N. Y., 78; *White v. Whitney*, 3 Met. [Mass.], 81; *Carter v. Denman*, 23 N. J. Law, 270.)

Interest was recoverable. (*Cheney v. Straub*, 35 Neb., 521; *Rhea v. Swain*, 122 Ind., 272; *Wilson v. Peelle*, 78 Ind., 384; *Wright v. Nipple*, 92 Ind., 314; *Mitchell v. Hazen*, 4 Conn., 495; *Hulse v. White*, 1 N. J. Law, 173; *Harding v. Larkin*, 41 Ill., 413.)

Expenses of the ejectment suit are part of the measure of damages, irrespective of notice. (*Morris v. Rowan*, 17 N. J. Law, 304; *Harding v. Larkin*, 41 Ill., 413; *Cheney v. Straub*, 35 Neb., 521.)

Parol notice of the ejectment suit was sufficient to make the judgment therein conclusive upon guarantor. (*Miner v. Clark*, 15 Wend. [N. Y.], 425; *Cummings v. Harrison*, 57 Miss., 275; *Hersey v. Long*, 30 Minn., 114; *Davenport v. Muir*, 3 J. J. Marsh. [Ky.], 310; *Ferrea v. Chabot*, 63 Cal., 564; *Somers v. Schmidt*, 24 Wis., 1; *Williams v. Burg*, 9 Lea [Tenn.], 455.)

The law does not require the notice to be in any particular form. (*Hersey v. Long*, 30 Minn., 114; *Williams v. Burg*, 9 Lea [Tenn.], 455.)

RYAN, C.

In the record of this case we find a copy of a petition and of an answer which purport to have been filed in the county court, as well as in the district court, of Lancaster county. In the caption of each of these pleadings there occur the words "In the county court of Lancaster county, Nebraska." There is nothing to show that there ever was a judgment in the aforesaid county court with respect to the issues presented by said pleadings; neither does it appear that the case tried in the district court, and sought to be reviewed in this court, was a continuation

of, or in any way connected with, an action in the county court. We shall, therefore, ignore the arguments presented with reference to the alleged want of jurisdiction of the county court, and the alleged departure in the district court from the issues claimed to have been tried in the county court.

By her amended petition filed in the aforesaid district court, Sarah E. Campbell alleged that on November 6, 1876, Thomas and Martha Walton, in consideration of the payment of $200, had conveyed lot 12, block 32, in Dawson's Addition, in the city of Lincoln, to R. J. Campbell. The covenants of warranty contained in the deed whereby said conveyance was made were in the ordinary form, as set out in the petition, and the breach of these covenants was the cause of action stated. We shall hereinafter describe specifically such matters as in the course of this discussion shall require a specific statement. For the present it is sufficient to say the answer contained a general denial, and that by a reply the affirmative averments of the answer were traversed. There was a verdict and judgment as prayed in the petition. There was an averment in the answer that the defendant in error lost her title, if she did lose it, by reason of her negligent failure to make a proper defense in an action wherein her grantor was a defendant. There is found no evidence upon which this negligence could be predicated, for the proof of this matter was excluded, and the ruling in this respect is not called in question by the petition in error.

Another paragraph of the answer was as follows: "And these defendants, for a further and fourth defense, say that they were never notified that plaintiff's title to said lot was questioned or attacked, and had no notice of the pendency of any suit against the same." Until after the filing of this answer there had been mentioned both Thomas Walton and his wife; hence the pleadings up to that time referred to two defendants. Thenceforward there seems to have been but one defendant, Mr.

Walton. It is not shown why this was, but as no importance seems to be attached to this circumstance, it will not be noted farther than to explain the use of the word "defendants," which occurs in the above quotation. The proofs were addressed only to facts with which Mr. Walton was connected, and were to this effect: R. J. Campbell testified that the action against himself and the defendant in error was brought by Frank M. Miles, in 1877 or 1878, as he thought; that whenever he met Walton on the street he talked with Walton about it; that Walton contended that they could not beat witness out of it; that witness told Walton witness was not fretting about it, because if witness lost the title he considered he had a good man to go back to, and that if witness lost the property he expected to go back on Walton; that Walton said that if witness went back on him for the purchase money, witness ought to transfer the title to Walton; that Walton talked this in the house of witness and, as he himself said, came there to talk that matter over. This witness said he was safe in saying he talked fifty times with Walton about this lawsuit while it was going on. Sarah E. Campbell, the defendant in error, testified that during the time the suit was pending in the United States circuit court Mr. Walton was at the home of defendant in error, and that it was talked that if the property was lost, Walton ought to have the title transferred back to him. Mrs. Campbell, in this connection, testified that Mr. Walton said: "If the Burrs had anything to do with it, let it go." She further testified that the theme of the conversation was: "If we had no title, how could we make any title back? How could I give one?" It is not just clear what Burrs were meant by the reference used in connection with that name by Mr. Walton. L. C. Burr was alleged, in the pleadings in the federal court, to be a party interested in the suit, as well as one of the attorneys of Mr. Miles. In this action the jury may have assumed that, as Mr. Burr was interested adversely to the title which Mr. Walton had covenanted to defend, it

was to him that Mr. Walton alluded. The evidence was not, therefore, of casual conversations between the Campbells and Mr. Walton, but was with reference to a discussion sought by Walton with respect to the suit pending, in which Walton was told distinctly that in case the title failed he would be called upon to make it good. There would appear from this testimony to have been made no objection on Mr. Walton's part as to his liability, but that the utmost he claimed was that in event of a loss of the property, and impliedly of his answering for such loss, the property should be conveyed to him. Not only did this conversation go this far, but, in addition, Mr. Walton suggested that if a certain contingency existed the defendant in error should let the property go. While it has been held that a written notice is necessary under such circumstances, we believe the better rule to be that a notice of the character of that shown in this case is sufficient to conclude the warrantor by the pending adjudication adverse to the title which he had warranted. (*Davenport v. Muir*, 3 J. J. Marsh [Ky.], 310; *Ferrea v. Chabot*, 63 Cal., 564; *Miner v. Clark*, 15 Wend. [N. Y.], 425; *Cummings v. Harrison*, 57 Miss., 275; *Chicago City v. Robbins*, 2 Bl. [U. S.], 418; *Hersey v. Long*, 30 Minn., 114.) This general statement of our conclusion is intended not only to apply to the discussion by plaintiff in error of the sufficiency of the proof of notice to sustain the verdict, but as well to meet the objection to the refusal to instruct as requested with respect to the legal propositions which should govern in the consideration of this branch of the case.

It is urged that, as Mrs. Campbell claimed to have acquired title only by virtue of a quitclaim deed, the covenants sued on did not inure to her benefit. In the petition it was alleged that in 1876, Thomas Walton and his wife, though they had no title, assumed to convey the lot in question to R. J. Campbell with covenants of warranty. It was further alleged that on May 26, 1888, there was an ouster from possession in a suit wherein

Frank M. Miles was plaintiff. From the averments it is fair to assume that Walton, while he had possession of the premises but no title, executed a conveyance with covenants of warranty to R. J. Campbell. The fact that possession passed by virtue of this deed was sufficient to cause the covenants to run with the title, for the covenants could not be said to be broken when made. (*Scott v. Twiss*, 4 Neb., 133.) There has been cited no case holding that the running of covenants with the title is dependent on the presence or absence of covenants of warranty. The rule of our statute is that: "Every conveyance of real estate shall pass all interest of the grantor therein, unless a contrary intent can reasonably be inferred from the terms used." (Compiled Statutes, ch. 73, sec. 50.) As the covenants run with the title it logically follows that whatever conveys the title is effective to carry with the title ·such covenants as were not broken when made, and, therefore, that Mrs. Campbell, as a subsequent grantee, was a proper party plaintiff.

The matters which constituted the claim for damages on account of the breaches of covenant were thus stated in the petition: "Plaintiff further alleges that some months prior to the 26th of May, 1888, said Frank M. Miles began an action in the circuit court of the United States, claiming the real title to these premises and to the possession thereof, and made this plaintiff a party to this action, of which defendant had due notice from plaintiff and others, and that plaintiff necessarily expended and was compelled to pay out for necessary costs and attorney's fees in defending said action against Frank M. Miles the sum of $200, and that plaintiff has sustained damages by reason of the premises in the sum of $200, and interest at the rate of seven per cent per annum from June 26, 1888, to date, and that the same now remains due and unpaid from the defendants, and each of them, to this plaintiff, and that by reason of this failure of the covenants in said deed heretofore mentioned, and of the succession of this plaintiff to said R. J. Campbell's cause of

action, this plaintiff has been further damaged in the sum of $200, paid to said Walton as the purchase price of said property." The prayer was for judgment in the sum of $400, with interest at seven per cent per annum from November 6, 1876. The averments of the damages sustained must control the recovery rather than the mere prayer of the petition. We shall therefore consider the elements of these damages as stated in the portion of the petition above quoted. The first of these elements was for attorney's fees and costs expended in the case wherein Miles was plaintiff and the Campbells were defendants. The proofs were simply that the reasonable attorney's fees for which Mrs. Campbell was liable were of the sum of $200. There was no attempt to prove that these had ever been paid; hence we do not think, on the proofs made, that interest should be allowed with respect to this item. It was alleged that the other item of $200 had accrued by reason of the failure of the covenants of warranty, but in what way this had been accomplished there was no attempt to explain or specify. In the petition there had been averments that on or about the 26th of May, or June, 1888, the said Miles had ousted and dispossessed plaintiff by due process of law. There was no proof of these averments, as made. The evidence was to the effect that after the rendition of the judgment in favor of Miles a man came to Mr. Campbell and said to him that he was a deputy United States marshal and had in his possession some sort of a writ which required possession to be given up to Miles. The answer of Mr. Campbell was that he would not give up possession, and on this line there was no further evidence. It was shown by the testimony of Mr. and Mrs. Campbell that after the litigation had ended between themselves and Frank M. Miles they paid him $500 for a conveyance of the property to them by quitclaim deed. The deed was introduced in evidence and bears date September 17, 1892. In *Cheney v. Straube*, 43 Neb., 879, it was said that after a judgment against his title a covenantee is not required

to prolong the controversy until dispossessed by legal process, but may surrender to the holder of the paramount title. We shall not undertake to determine what might be held to be the rule under other circumstances, but shall follow the line upon which this case was tried in the district court, wherein it seems to have been assumed that the averments of actual ouster were sufficiently proved by evidence showing the recognition of the right to an eviction by a purchase of the title adjudged paramount to that of the defendants. The equivalent for the alleged eviction must, however, be accepted with all its disadvantages, and one of these is that the date at which the ouster must be assumed to have occurred is the date of the deed from Miles to Mrs. Campbell. Giving to the general averment that the damage caused by the failure of the covenants of warranty the liberal construction that thereby was covered the expenditure of $200 to purchase peace with Miles,—a construction adopted by us because it seems to have been adopted in the district court,—and we are justified in assuming that on the date of the quitclaim deed from Miles the possession of the Campbells under the title derived from Walton, ended. Their cause of action, therefore, accrued at this time, and, what is still more to our present purpose, the damages suffered by the failure of the title, $200, according to the averments of the petition, are to be deemed to have come into existence at this date. There should, therefore, have been allowed interest on this item only from September 17, 1892, at seven per cent per annum. The verdict was returned in this case for the sum of $762.25 on October 23, 1894. The interest on $200 at seven per cent per annum to that date from September 17, 1892, was $29.40. To this, if the two sums of $200 each be added, it will be seen that in no event should the verdict have been in excess of $429.40. If, within forty days from that on which this opinion shall be filed, the defendant in error shall enter a remittitur of the excess of the judgment above $429.40, as of the date when such

judgment was rendered, it will be affirmed, otherwise it must be reversed.

JUDGMENT ACCORDINGLY.