BENJAMIN F. TROXELL, APPELLANT, V. WILLIAM J. STEVENS ET AL., APPELLEES.

FILED JANUARY 5, 1899.   No. 8577.

1. Deeds: AFTER-ACQUIRED INTEREST. By virtue of section 51, chapter 73, Compiled Statutes, an after-acquired interest in real estate by a grantor inures to the benefit of the grantee when the deed purports to convey a greater interest or estate than the grantor owns at the time of the conveyance.

2. ———: ———. A grantee in a quitclaim deed takes only the grantor's existing interest, and the after-acquired title of his grantor in the property does not pass to him.

3. ———: ———: CANCELLATION OF CONVEYANCE. An after-acquired title does not inure to the benefit of the grantee, where the deed of conveyance under which he claims has been canceled and annulled by a decree of court.

4. Action on Covenant: EVICTION. An action cannot be maintained on a covenant of warranty of title, where it appears there has been no actual eviction or surrender of possession of the granted premises by reason of a paramount title.

5. Occupying Claimants: EVICTION: IMPROVEMENTS. A decree canceling a deed under which a grantee asserted title, the appointment of appraisers under the act for the relief of occupying claimants (Compiled Statutes, ch. 63) to assess the value of the lasting improvements of the grantee, and the confirmation of the report of the appraisers by the court, alone do not amount to an eviction, where the owner of the paramount title has neither elected to accept the value of the land nor to pay the occupant the value of his improvements, and the physical possession of the latter has not been disturbed.

6. Deeds: COVENANTS OF WARRANTY. Covenants of warranty in a deed for the conveyance of real estate, not broken when made, pass

with the title, even though the subsequent conveyances are by quitclaim deeds.

7. **Occupying Claimants: Improvements: Appraisement: Eviction.** Where the appraisement has been made under said act, the unsuccessful occupant cannot be ousted of possession of the premises until the successful owner has elected to pay, and has paid, the appraised value of the improvements or elected to accept the value of the land, and the occupant has refused to pay the same.

8. ———: ———: **Sale.** The occupant may not have the land and improvements sold to pay the parties the value of their respective interests,—at least not until a time has been fixed by the court within which the successful owner may elect whether he will accept the value of the land without the improvements, or pay the value of the improvements, and he has refused to make such election.

Appeal from the district court of Douglas county. Heard below before Duffie, J. *Reversed.*

*Warren Switzler*, for appellant.

*H. L. Day, J. Q. Burgner, Meikle & Gaines, Silas Cobb, Bartlett, Baldrige & De Bord, W. H. De France, E. W. Simeral, William Simeral, Wright & Thomas*, and *Montgomery & Hall, contra.*

Norval, J.

This is a suit by Benjamin F. Troxell to foreclose a mortgage on lot 1 of Troxell's subdivision of lot 3 of Geise's addition to the city of Omaha, executed by William Stevens, one of the defendants. Several judgment creditors of Stevens were made defendants, who appeared in the cause and set up their judgments. The Somerset Trust Company presented an answer and cross-petition, praying the foreclosure of a tax-sale certificate. William J. Stevens filed an answer, pleading a counterclaim for damages for breach of the covenant of warranty in a deed to the mortgaged premises made by plaintiff to Richard S. Maulsby, said Stevens' immediate grantor. Jennie E. Stevens answered, asserting a lien

upon the premises by reason of the assignment to her by said William J. Stevens of his rights and interests in a decree rendered in his favor under the statute in the case of Englebert against Troxell and others in the district court of Douglas county, for lasting improvements placed on the lots covered by the Troxell mortgage. Upon the trial the court below found, *inter alia*, that William J. Stevens had sustained damages by reason of the breach of plaintiff's covenant of warranty in the sum of $1,614.67, from which amount was deducted $1,342.71, due on the mortgage, and a decree was rendered against Troxell in favor of William J. Stevens for $271.96. The court also awarded Jennie E. Stevens a lien on the premises for lasting improvements in the sum of $1,613. There are other provisions in the decree which need not now be stated. Plaintiff has appealed. The sole controversy in this court is between Troxell and William J. and Jennie E. Stevens.

It is disclosed that one Francis Leon Englebert, a minor, was the former owner of the lot described in the mortgage, and while remaining such owner he executed a deed conveying the same and other real estate to one George E. Pritchett, who conveyed the property to Adolph Meyer. The latter sold and conveyed to John I. Reddick, who executed a deed to the premises to Troxell, the plaintiff and appellant herein. On November 10, 1887, by deed of general warranty he conveyed to one Richard S. Maulsby, who with covenant of warranty deeded the lot to Peter Ulrich, and the latter subsequently quitclaimed his interest in the property to his said grantor. Afterwards Maulsby executed a conveyance to the premises to William J. Stevens, and the latter subsequently gave the mortgage in suit. On August 17, 1893, William J. Stevens, by deed of quitclaim, conveyed said lot 1 to Jennie E. Stevens. On November 14, 1889, shortly after Francis Leon Englebert had reached his majority, he instituted in the district court of Douglas county a suit against said George E. Pritchett and the other persons

named, to whom the lot had been conveyed, down to and
including William J. Stevens, to cancel and set aside
his deed to Pritchett and the other conveyances, because
of his minority at the time his deed was executed. The
district court rendered a decree canceling all the deeds
and ordered an appraisement of the real estate and last-
ing improvements, in accordance with the statute en-
acted for the benefit of occupying claimants. The ap-
praisal was made in accordance with the decree, which
the district court confirmed. Troxell prosecuted an ap-
peal, and the decree was affirmed by this court. (*Engle-
bert v. Troxell*, 40 Neb. 195.) Shortly after said decision,
on May 7, 1894, said Francis Leon Englebert, by his at-
torney in fact, conveyed the mortgaged premises to one
William A. Reddick, who on October 26 of the same year
executed a deed for the same to Troxell. Subsequently
the present suit was instituted in the court below.

It is argued on behalf of plaintiff that there has been
no breach of his covenant of warranty, because he de-
fended the title to the lot in the district court, as well
as here on appeal, as he agreed to do by the covenant of
his deed, and when defeated in the court of last resort
he purchased the Englebert title, thereby preventing an
ouster of William J. Stevens and his grantee, Jennie E.
Stevens. Section 51, chapter 73, of the Compiled Stat-
utes is invoked to support this line of argument, which
section declares: "When a deed purports to convey a
greater interest than the grantor was at the time pos-
sessed of, any after-acquired interest of such grantor to
the extent of that which the deed purports to convey,
shall accrue to the benefit of the grantee; *Provided, how-
ever*, That such after-acquired interest shall not inure to
the benefit of the original grantor, or his heirs or assigns,
if the deed conveying said real estate was either a quit-
claim or special warranty," etc. This piece of legislation
makes an after-acquired interest in real estate by a
grantor inure to the benefit of the grantee only, where
the deed purports to convey a greater interest or estate

than the grantor at the time owned. If he merely conveys a present title or interest, then any title which he subsequently obtains to the property does not pass to the grantee. Manifestly the statute has no application where the transfer is by a deed of quitclaim. (*Pleasants v. Blodgett*, 39 Neb. 741.) If the provision quoted has any bearing on the present controversy it is obvious that it did not have the effect to vest in either William J. Stevens or Jennie E. Stevens the subsequently obtained interest of Englebert in the property, since all the conveyances through which they claimed title did not purport to transfer the fee. The record shows that Jennie E. Stevens asserts title through a quitclaim deed from William J. Stevens, and also that one Peter Ulrich, a grantor in one of the conveyances in his chain of title, on November 8, 1888, made a quitclaim deed to the lot to Maulsby, so that, under the statute, the after-obtained Englebert title did not reach to Jennie E. Stevens, or inure to her benefit. This after-acquired title did not pass either to her or William J. Stevens for another reason. All the deeds constituting their chain of title, beginning from the one to Pritchett and all the subsequent *mesne* conveyances down to and including the deed to William J. Stevens, were canceled and annulled by the decree in the case of *Englebert v. Troxell, supra*. The several deeds, therefore, were no longer in existence for the purpose of conveying, or supporting, title, and hence were wholly insufficient to transmit the after-acquired estate to the Stevenses. The deed subsequent to the decree in the case above mentioned from Englebert to Reddick, and from Reddick to Troxell, vested the paramount title in the latter, in whom, so far as this record shows, it still remains. The procuring of the Englebert title by this plaintiff was alone insufficient to defeat an action for a breach of his covenant of warranty. If plaintiff desires to invest the title to the lot in William J. Stevens and make good his covenant, he can effectuate such purpose by an appropriate conveyance.

It is insisted that the covenant has not been broken, inasmuch as neither William J. Stevens nor Jennie E. Stevens has been evicted by, nor have they surrendered possession of the premises to, the owner of the paramount title. This court is unalterably committed to the doctrine that no recovery can be had on the covenant of warranty unless there has been an actual eviction, surrender, or attorning by reason of the paramount title. (*Real v. Hollister*, 20 Neb. 112; *Cheney v. Straube*, 35 Neb. 521; *Troxell v. Johnson*, 52 Neb. 46; *Hampton v. Webster*, 56 Neb. 628.) The wisdom and soundness of this rule may well be doubted, but it has been so often announced and applied by this court as to become a settled rule of property, and should be adhered to by the court until the rule is changed by appropriate legislation. In the case in which we are dealing there is an entire failure of proof of actual eviction or surrender of possession. William J. Stevens or Jennie E. Stevens has been and now is in the actual occupancy of the lot. The owner of the paramount title since the decree in *Englebert v. Troxell* has asked neither of them to vacate the property or attorn to him. They have not pleaded an actual eviction or surrender, unless said decree amounts to that. The averments in the answer upon that subject follow: "That by virtue of the said paramount title of the said Francis Leon Englebert, and contrary to said deed and covenants of the deed as aforesaid, this defendant, after his entry into possession of said premises under his said deed of conveyance as aforesaid, was ousted and dispossessed of said premises and evicted from the same by due course of law, by virtue of certain proceedings duly instituted in the district court of Douglas county, state of Nebraska, wherein the said Francis Leon Englebert was plaintiff and Benjamin F. Troxell and others were defendants, wherein it was adjudged that the plaintiff herein, said Benjamin F. Troxell, did' not have a good and sufficient title to said premises at the time of the said conveyance of said premises by him to the said

Richmond S. Maulsby.   This defendant has therefore sustained damages by reason thereof in the sum of $1,500 and seven per cent interest thereon from December 10, 1888, together with the sum of $500, incurred as expenses by this defendant in defending against said suit of said Englebert as aforesaid, less the said sum of $1,000 paid by plaintiff thereon by means of his said payment of his said promissory note, as set out in his petition herein." Thus it will be seen the defendants plead the decree in the case of Englebert against Troxell as constituting an eviction, and the proofs make no stronger case against this plaintiff than is stated in the foregoing excerpt from the answer.   The same decree was pleaded and proven in the case of Troxell against Johnson,—an action for breach of the covenant of warranty in the deed covering other property described in the conveyance heretofore mentioned from Troxell to Maulsby; and yet this court held that, as there had been no actual eviction or surren- -der of possession on account of the Englebert title, an action on Troxell's covenant of warranty would not lie. That decision controls the disposition to be made of this case on the branch we are now considering, except in one particular.   In that case the reported decision does not show that appraisers were appointed under the occupy- ing claimants act to appraise the lasting improvements and the value of the premises, while it is established by this record that such appraisement was made in con- formity with the statute on the subject.   And it is stren- uously urged that those proceedings in the decree of *Englebert v. Troxell* are equivalent to an actual eviction or actual surrender to the owner of the superior title. In the light of the adjudications of this court we cannot so hold.   It is true in *Englebert v. Troxell* the decree pro- vided for the issuance of a writ of ouster, and the value of the real estate, as well as the value of the lasting im- provements, were assessed by appraisers duly selected for that purpose.   But no writ of restitution has ever been demanded by any owner of the Englebert title, nor

has such process ever issued. The physical possession of the premises by Stevens has never been disturbed. No election prior to this suit had ever been made by the owner of the paramount title to either accept the value of the land, or to pay Stevens the amount assessed for the improvements, as the statute relating to occupying claimants permitted him to do. Nor does the decree in the case of *Englebert v. Troxell* fix the time in which such election should be made. The owner of the paramount title may never avail himself of the benefit of the statute or disturb the occupant of the lot in his possession thereof. Had the owner of the Englebert title elected to accept the value of the land as found by the appraisers and approved by the court, and Stevens had paid the same, then these might be ground for an argument that there had been a technical eviction by the paramount title, although he remained in the physical occupancy of the premises. But this is not such a case. Stevens has not as yet lost the land. He or his grantee may never be dispossessed, and possession may ripen into a perfect title. Under the occupying claimant's act Stevens could not be ousted of possession until there had been an election to receive the value of the property or pay the value of the improvements and a compliance therewith; but as there has been no election and as Stevens could not be evicted until he had been paid for his improvements, it is obvious that the decree in *Englebert v. Troxell* does not constitute an eviction, or surrender to the paramount title; and hence a cause of action for breach of covenant of warranty has not yet accrued.

William J. Stevens cannot recover on the covenant of warranty for another reason. Prior to the bringing of this suit he executed and delivered a quitclaim deed to the premises to Jennie E. Stevens, thereby conveying to her any cause of action he may have for breach of covenant of warranty. The covenant in Troxell's deed was not broken when made. He at that time possessed title to the lot, which was perfect until Englebert dis-

affirmed his conveyance to Pritchett, which act of dis-affirmance was subsequent to the making of the deed by Troxell to Maulsby. The rule is that covenants of war-ranty, in a deed for the conveyance of real estate, not broken when made, pass with the land, notwithstanding the subsequent conveyances are by quitclaim deeds. (*Walton v. Campbell*, 51 Neb. 788.) So in any view the decree allowing William J. Stevens damages for breach of covenant of warranty is erroneous.

We pass now to the consideration of the question whether Jennie E. Stevens is entitled to a decree for the sale of the premises to pay the value of the lasting improvements placed on the lot by her grantor. As here-tofore stated, the value of the real estate without the im-provements, and the value of the improvements alone, were appraised under chapter 63, Compiled Statutes, en-titled "Occupying Claimants." The sections of said chapter which have a bearing on this branch of the case read as follows:

"Sec. 7. If upon the final hearing there shall be found a balance in favor of the occupant or unsuccessful claimants, the person proving the better title may either demand of the occupant or claimant the value of the real estate without improvements as shown by the appraise-ment, and tender a general warranty deed for the real estate in question to such occupant or claimant, or he may pay into court the balance so found due such oc-cupant or claimant within such time as the court shall allow in its final decree.

"Sec. 8. If the successful claimant shall elect to pay and does pay to the occupant or claimant the balance found due him on the final hearing within such time as the court shall direct, then a writ of possession shall be issued in his favor against such occupant, or decree shall be entered against such unsuccessful claimant as the case may require.

"Sec. 9. If the successful claimant shall elect to re-ceive the value of the real estate without improvements,

to be paid by the occupants or claimant within such time as the court shall direct, and shall tender a general warranty deed for such real estate to the occupant or claimant, and such occupant or claimant shall refuse or neglect to pay said sum of money to the successful claimant within the time allowed by the court for that purpose, then such successful claimant shall deposit with the clerk of the court the amount found due the occupant or claimant, and thereupon a writ of possession shall be issued in favor of such successful claimant, or decree shall be entered in his favor as the case shall require.

"Sec. 10. The occupant or claimant shall in no case be evicted from possession, or deprived of his right in the premises, except as provided in the two preceding sections, and in case the successful claimant shall neglect to elect to take said real estate with improvements, or to convey the same to the occupant or claimant within such time as the court shall direct, then decree shall be entered in favor of the occupant or claimant upon his payment into court the value of the real estate without improvement. Such decree shall have the effect to transfer and convey to such occupant or claimant the title and rights of the successful claimant."

By the provisions of said sections Englebert had the right to elect to demand from the occupant the value of the lot in question without the improvements as determined by the appraisers in the case of *Englebert v. Troxell*, and approved by the court, and tender a general warranty deed for the premises to such occupant, or pay the amount found by the appraisers for valuable and lasting improvements placed upon the lot; and in case he chose the second alternative and complied therewith within the time that should be named by the court, he was entitled to a writ to dispossess the occupant, or the rendition of a decree in his favor, as the nature of the case should suggest. Englebert had the option to either accept the assessed value of the land without the improvement or keep the lot; and Troxell, being the owner

of the paramount title, is subrogated to the rights of Englebert in the premises. The district court, in confirming the report of the appraisers in *Englebert v. Troxell*, did not fix, nor has it since fixed, a time within which the election should be made as the statute contemplated, and until such time has been designated and there has been a failure to elect within the period so granted, the occupant is in no position to demand that the premises be sold to satisfy the appraised value of the improvements. The owner of the paramount title is given the right of election, and until he has exercised that right, or the time has elapsed in which he may take such step, he is not in default, and manifestly it will be contrary to the spirit of the law that the lot should be sold to pay the value of the improvements. The owner of the paramount title, doubtless, might waive the value of the lot and by appropriate deed convey the title to the occupant, in which case the latter could not ask pay for improvements. The statute forbids that the occupant shall be dispossessed until he has been compensated for the value of the improvements. But in the present case the lien for the improvements is junior to the mortgage given by William J. Stevens and also the lien for taxes.

The decree of the district court in the present case is reversed and the cause remanded with instructions to enter a decree foreclosing plaintiff's mortgage, as well as the tax lien in favor of the Somerset Trust Company, giving the lien for taxes priority over the mortgage, and decree that William J. Stevens has no claim or interest in the property; that Jennie E. Stevens has a lien on the lot for the value of the lasting and valuable improvements placed thereon, as ascertained and found by the appraisers, and is entitled to retain the possession of the lot until said sum is paid, or the land is sold as provided by decree; that the plaintiff has the option to pay the value of the improvements at any time within sixty days after the entry of the decree, and upon the payment thereof to the clerk of the district court for

the use of Jennie E. Stevens all her right and claim for the possession of the land and improvements thereon shall be thereby extinguished, and the plaintiff shall immediately be let into possession of said property; or plaintiff may within said time elect to receive the value of the land without the improvements, and in case he do so and Jennie E. Stevens complies therewith by paying such value, plaintiff shall forthwith execute a deed of general warranty conveying said lot to her; or plaintiff, as a third alternative, may within said time execute and deliver such deed without demanding the value of the lot; and if said plaintiff shall decline to exercise any one of said options within the time specified, then, upon the motion of either of said plaintiff or Jennie E. Stevens, the district court will direct said land, with improvements thereon, to be sold as upon execution to the highest bidder for cash in hand, and upon the confirmation of such sale a deed shall be made to the purchaser for the property, which shall have the effect to vest in him all the right, title, estate, and interest of the said plaintiff and Jennie E. Stevens in said lot and improvements thereon, and said purchaser shall be let into the possession of the same. After paying costs of the suit, the remaining proceeds of the sale of the said land and improvements, after paying the amount found due on the mortgage and the tax lien of the said Somerset Trust Company, shall be paid to the plaintiff and Jennie E. Stevens in the proportion that the value of the improvements bears to the value of the land.

REVERSED AND REMANDED.