MARSHALL WEBB, APPELLEE, V. ROSINA WHEELER,
APPELLANT.

FILED JANUARY 8, 1908.   No. 14,811.

1. **Covenants:** BREACH. A covenant in a deed that "I hold said prem-
ises by good and perfect title," if untrue, is broken when made,
and right of action at once accrues thereon.

2. ———: ———: RECOVERY FOR IMPROVEMENTS. When the plaintiff is
in possession of the premises and can recover the value of his
improvements under the "occupying claimant's act," he cannot
recover the value thereof in such action for damages.

APPEAL from the district court for Nemaha county:
JOHN B. RAPER, JUDGE. *Reversed.*

*Stull & Hawrby* and *H. A. Lambert,* for appellant.

*Neal & Quackenbush, contra.*

SEDGWICK, C. J.

Three important questions are presented in this case.
Two of them have been very much discussed by the courts
of the country generally, and the authorities are somewhat
at variance thereon. In the decisions of this court there
appears to be a diversity of expression at least, and per-
haps it may be said a conflict in principle. The real estate
in controversy was conveyed to this defendant by a deed
with general covenants of warranty executed jointly by
one Emma Carse, widow of Henry Carse, deceased, and
her daughter, Alice V. McCandless, the husband of Mrs.
McCandless joining also in the deed. Henry Carse in his
lifetime was the owner of the premises and had good title
thereto. The said deed to this defendant recited that the
grantors were the heirs of Henry Carse. The defendant
conveyed the land to this plaintiff, the deed of conveyance
containing covenants of title and warranty. Afterwards
the plaintiff discovered that Mrs. Carse and her daughter
were not the only heirs of Henry Carse; that an adopted

child was an equal heir with Mrs. McCandless, and so the title conveyed to the defendant, and by her conveyed to this plaintiff, was an undivided one-half interest in the land, together with the widow's dower estate. Upon discovering this defect in the title the plaintiff brought this action. The plaintiff took possession of the land under his deed and had not been disturbed in his possession when this action was begun. The two important questions above referred to which arise upon these facts are: First, can an action be maintained for damages for breach of covenant of title to real estate before eviction, and in such case what is the measure of damages? A further question also arises in the case in determining the measure of damages from a consideration of the following facts. The defendant made lasting improvements upon the property in good faith while she held, as she supposed, full title to the property, and also the plaintiff, after he received his warranty deed from the defendant and went into possession of the property, made lasting and valuable improvements thereon. Should the value of these improvements, both those made by the plaintiff and by the defendant, be taken into consideration in determining the amount of plaintiff's damages?

1. The decisions of this court are not as clear and satisfactory as might be wished upon the first question above suggested. It seems to be conceded in the briefs that all of the courts of this country, including the supreme court of the United States, but excepting the courts of Ohio, Wisconsin and Nebraska, hold that a covenant in a deed that the grantor has perfect title is broken when made if the title is not perfect, and that an action at once accrues thereon for damages. In Ohio it is held "that a seizin in fact of the grantor at the time the deed was executed is a sufficient compliance with the covenant of seizin in the deed." In this holding it would appear that the word "seizin" is construed to mean a claim of title accompanied with possession, and therefore in Ohio under a covenant of seizin an action cannot be maintained for damages on

account of failure of title if the grantee is in undisputed possession of the premises. In *Scott v. Twiss*, 4 Neb. 133, Mr. Justice MAXWELL adopted this principle and declared it to be the law of this state. It is plain that in this opinion the word seizin was understood as in the Ohio case. A covenant for seizin, then, only meant that the covenantor was in peaceable possession of the premises under a claim of right and covenanted that the same estate was transferred to the grantee. Of course, the covenant that the grantee should have peaceable possession under a claim of right was not broken until that possession was terminated, and under such a covenant it does not seem to have been necessary to have discussed the common law rules of conveyance, except so far as it was necessary to determine the meaning of the word seizin, and of the covenant in which that word was used. Perhaps the real difference between the Ohio court and the supreme court of the United States and other courts of this country is in the force and effect given by construction to the various covenants considered. It would seem reasonable to say that the spirit of our law which deals with the substantial rights of parties, rather than with antiquated forms, would require the courts to inquire as to the real meaning of the covenant involved and being construed. What did the grantor agree to do? Has he broken that agreement? If he has, what actual damage has he caused to the grantee by so doing? A satisfactory answer to these questions ought to dispose of the case. If in framing his covenants the grantor sees fit to use the word seizin or other technical terms, it is reasonable to suppose that he intended that the recognized technical meaning of such expressions should be given them in construing his contract, and so in *Scott v. Twiss, supra,* the grantor having agreed to protect the grantee in his seizin of the premises, the court assumed that his covenant was not broken as long as the grantee obtained that which it is there agreed for him to have, to wit, the seizin (possession with claim of right) of the premises. Perhaps all courts do not agree

in this definition of the word seizin, but when the word is so defined, as it appears to have been in *Scott v. Twiss*, then the conclusion reached upon this point in that case is unavoidable. In *Cheney v. Straube*, 35 Neb. 521, the rule was announced in this language: "A cause of action on a covenant of warranty, or for a quiet enjoyment, does not accrue in favor of the covenantee until eviction or surrender by reason of a paramount title." The language of the covenant sued upon in this case was: "And I covenant to warrant and defend the said premises against lawful claims of all persons whomsoever." And the court said: "This covenant is considered to be tantamount to that for quiet enjoyment, and what will amount to a breach of the latter is also a breach of the former." With this construction of the meaning of the covenant there can be no doubt of the correctness of the conclusion. If the agreement of the grantor with the grantee was that the grantee should remain in quiet enjoyment of the premises, that agreement would not be broken until the grantee was deprived of possession. In *Hampton v. Webster*, 56 Neb. 628, the second paragraph of the syllabus is as follows: "In an action to recover damages for breach of covenants of warranty of title it is essential to allege in the petition that plaintiff has been evicted by title paramount." Substantially the same language is used in *Troxell v. Stevens*, 57 Neb. 329. The language of the covenant involved is not stated in either of these opinions; but, as *Real v. Hollister*, 20 Neb. 112, is cited as authority in both of these cases, it is presumed that the covenant was in the language discussed in that case. The covenant there discussed was: "They do hereby covenant to warrant and defend the title to said premises against the lawful claims of all persons whomsoever." And the court said that this is equivalent to a covenant for quiet enjoyment. The distinction may, perhaps, be a little fine, and yet it will be noticed that the covenant is to defend the title against the claims of other people, and not that the grantor had a good and perfect title at the time that he made the conveyance. Under a

covenant to defend it may well be urged that the covenantor was entitled to an opportunity to defend before he should be called upon to respond in damages. The court, however, upon the point under discussion in the case last named, quoted the following language from Mr. Greenleaf: "The covenant for *quiet enjoyment* goes to the possession, and not to the title; and, therefore, to prove a breach, it is ordinarily necessary to give evidence of an entry upon the grantee, or of expulsion from, or some actual disturbance in the possession; and this, too, by reason of some adverse right existing at the time of making the covenant, and not of one subsequently acquired." 2 Greenleaf, Evidence (16th ed.), sec. 243. He also quoted from Mr. Chancellor Kent as follows: "But the covenant of warranty and the covenant for quiet enjoyment are prospective, and an actual ouster or eviction is necessary to constitute a breach of them." 4 Kent, Commentaries, p. *471. From this last quotation it appears that formerly, when the word "warranty" was used without other qualification, it had a prospective meaning; that is, it was construed to mean that the grantor agreed to defend the rights of the grantee in the property conveyed, and should only be called upon to respond in damages when he had failed to make good such defense. In 8 Am. & Eng. Ency. Law, p. 90, note 1, it is said: "In Nebraska the Ohio doctrine was followed in *Scott v. Twiss*, 4 Neb. 133, but discarded, without notice of that case, in *Real v. Hollister*, 20 Neb. 112." This statement seems to be hardly warranted from a careful comparison of the two decisions, if the distinction between a covenant for quiet enjoyment and a covenant that the grantor then has perfect title and right to convey is considered.

In the case at bar, the covenant contained four express promises: "That I hold said premises by good and perfect title; that I have good right and lawful authority to sell and convey the same; that they are free and clear of all liens and incumbrances whatsoever; and I covenant to warrant and defend the said premises against the lawful

claims of all persons whomsoever." The last promise is
undoubtedly the form of covenant considered in the cases
of *Real v. Hollister, Hampton v. Webster*, and *Troxell v.
Stevens, supra*. Such a covenant is not broken until
the covenantor fails to defend the premises against the
lawful claims of other persons, and there is some reason
for saying, as was said by Judge Cobb in *Real v. Hollister,
supra*, that such a covenant is construed to be a covenant
for quiet enjoyment. But there appears to be no reason
whatever for so construing the covenant "that I hold such
premises by good and perfect title." If this covenant is
not broken when it is made, in case the title is not good
and perfect, then it cannot be broken by dispossessing the
covenantee. We see no reason to resort to the technical-
ities of the rules of common law conveyancing to ascertain
the meaning of a contract couched in ordinary, simple lan-
guage, as is this covenant. No technical words are used,
and the rule of the code that common words are to be used
in their ordinary sense is applicable. Very many of the
cases from which it is commonly supposed that there is an
irreconcilable conflict of authorities upon this question
involved the construction of contracts to convey. When
the contract is to execute a conveyance with the usual
covenants of warranty, or with the usual covenants of
seizin, or like expressions, and contains no other language
from which it can be determined in what sense these ex-
pressions are used, it becomes necessary to consider the
technical meaning of such expressions, and the courts of
different jurisdictions have under such circumstances de-
clared the general expression "with usual covenants of
seizin," or "with usual covenants of warranty," to be
generally understood in the locality where they are used
as having a certain specified meaning, and it is not sur-
prising that under such circumstances varying meanings
should be given in different jurisdictions to the same form
of words. But, when the contract to convey or the deed
that has been executed in pursuance thereof contains cove-
nants in such plain language as to leave no doubt of their

meaning, there can be no necessity for a resort to conflicting authorities. The petition in this case alleged all of these four covenants and alleged the breach thereof. The proof failed to show that the covenant "to warrant and defend the premises against the lawful claims of all persons whomsoever," that is, the covenant for peaceable possession and quiet enjoyment, had been broken. The plaintiff was still in undisturbed possession of the land. But the proof showed beyond question that the covenant that the grantor held "said premises by good and perfect title" was broken when made. The grantor did not then have a good and perfect title, and there can be no reason for refusing the plaintiff his action to recover his damages caused by the breach of this covenant as soon as he ascertained the facts.

2. The second question as to the measure of damages in such case has also been much discussed and presents some difficulty. More than a century and a quarter ago the courts of England established the principle that upon a contract for the purchase of real estate, if the vendor, without fraud, is incapable of making a good title, the purchaser is not entitled to any compensation for the loss of his bargain. *Flureau v. Thornhill*, 2 Wm. Bl. (Eng.) *1078. This case appears to have been generally followed in England since that time, and the questions discussed in regard to it have been as to exceptions to the rule. A discussion of this matter may be found in a somewhat extensive note to *Kirkpatrick v. Downing*, 17 Am. Rep. 678 (58 Mo. 32). In the principal case the Missouri court discusses the matter somewhat at length, and referring to the authorities in this country and after quoting from the opinion of the supreme court of the United States in *Hopkins v. Lee*, 6 Wheat. *109, which it appears to follow, the Missouri court said: "The rule (of the United States court) commends itself for its intrinsic justice. It conforms to the varying circumstances of each particular case, and is equitable and just. The arbitrary and unbending rule that the purchase money and interest shall in all

cases be taken as the criterion of damages will, in the majority of instances, do injustice either to the seller or purchaser. No reason is perceived why it should be adhered to and enforced, when one more consistent with equity is found, and which is easily administered. The rule for which we contend is just to both parties. It gives to the purchaser precisely what he has lost in consequence of the breach of contract committed by his vendor, and it makes the latter responsible for the violation of his agreement in the full amount to which he has occasioned injury." In *Beck v. Staats*, p. 482, *post*, the law is said to be in this state: "The measure of damages for the breach by the vendor of an executory contract for the conveyance of real estate, where the breach is caused either from the refusal or the inability of the vendor acting in good faith, is the difference between the value of the land at the time of the breach and the price he contracted to receive, and in addition thereto the vendee may recover the amount advanced upon the purchase price." The opinion in the case was carefully prepared by Mr. Commissioner EPPERSON, and we feel satisfied with the conclusion reached. It is shown in that opinion that this court is thoroughly committed to the doctrine there announced by a long line of decisions. We cannot perceive any basis for a different rule as to the measure of damages upon a breach of covenant that the grantor has good title and the measure of damages upon a breach of a contract to convey and give such title. The court of errors and appeals of New Jersey in *Gerbert v. Trustees*, 59 N. J. Law, 160, 59 Am. St. Rep. 578, speaking of this question, said: "The injury in both cases is the same—the loss of the property, the loss of such profit as would have been incident to increased value. The loss in both cases arises from the breach of the vendor's covenant on account of the defect in his title. There can, therefore, be no solid basis for diversity in the rule of damages applicable to the two conditions, and the rule should be unified if there is no serious obstacle in the way." And it is equally clear that,

while there is some diversity in the language used in the various opinions, this court is thoroughly committed to the rule of damages that is announced in *Beck v. Staals, supra,* in the cases arising upon contracts to convey real estate.

We think that whether we are bound by the earlier decisions of this court to observe a different rule in the case of breach of a similar covenant in a deed of conveyance it is unnecessary now to discuss, further than to illustrate the rule that should be applied to a case like the one at bar. In this case there was not an entire failure of title. The plaintiff contended, and the trial court appears to have held, as stated in 11 Cyc. 1163, that, "where the breach is only as to an aliquot and undivided part of the land attempted to be conveyed, the damages are in proportion to the whole consideration paid as that aliquot part of the land is to the whole thereof." We think that, in any view of the proper measure of damages in ordinary cases of the breach of such covenants, the rule above quoted, if correct (which we do not decide), has not been properly applied in this case. After the defendant had obtained her title from Mrs. Carse she put valuable and lasting improvements upon the land, and this plaintiff has also made valuable improvements as before stated. Under our occupying claimant's act this plaintiff could not be deprived of the land without payment for the improvements made both by himself and by his grantor who held under the same title. What, then, could the adopted child of Mr. Carse, whose interest in the land has not been conveyed, claim in this land? The failure of title which this plaintiff obtained through his deed is only as to the interest of this adopted child. It is true that, in an action like this for damages for a breach of covenant of title, difficulties and uncertainties are involved as to the real value of the interest in the land not conveyed to this plaintiff in his deed. These difficulties and uncertainties the plaintiff himself has brought to the court, by not first bringing an action to determine and have adjudicated the

Webb v. Wheeler.

interest involved in the outstanding title; and he should not be allowed in this action to recover the value, or any part of the value, of those improvements that were placed upon these premises by himself or his grantor, since he cannot be deprived of those improvements through this outstanding title, and therefore has not lost the value thereof through this defect in his title. The measure of his damages in this case, then, is the value of the outstanding title at the time that the plaintiff obtained his deed— that interest in the land of which he might be deprived through this outstanding title.

The plaintiff insists that this issue is not presented in the pleadings, but we think that this objection is not well taken. The plaintiff in his petition alleged: "That after the purchase of said premises from said defendant, and prior to plaintiff's knowledge of said defect in the title and the interest of said Avis Darleen Carse in and to said premises, the plaintiff had expended in permanent improvements and betterments on said premises the sum of $350." The answer was a general denial. The court allowed the plaintiff to recover one-half of the improvements placed thereon by himself. This he was not entitled to on any theory of the rule of measure of damages in such case. The plaintiff, being still in possession of the land and in use of these improvements, has not lost the value thereof through the defect in his title.

The judgment of the district court is therefore reversed and the cause remanded.

REVERSED.