SUTTON *et al. v.* CANNON.[*]

(Division B. May 12, 1924.)

[100 So. 24. No. 23853.]

1. COVENANTS. *Grantor liable for breach of warranty, though grantee had notice of incumbrance.*

Under Code 1906, section 2817 (Hemingway's Code, section 2318), a grantor who executes a general warranty deed is liable for breach of warranty by reason of incumbrances, though grantee had notice thereof at time of purchase of property.

2. COVENANTS. *Grantee's surrender of possession held not to preclude recovery of damages for breach of warranty of title.*

Where land for which grantee had contracted to pay ten thousand dollars was advertised for sale with other lands under a deed of trust securing notes for twenty-seven thousand dollars, and grantee made unsuccessful effort to induce grantors to discharge incumbrance or protect his title from the sale, his surrender of possession did not preclude him from recovering from grantors for breach of warranty of title.

3. COVENANTS. *Deed of trust and trustee's deed thereunder held to make prima-facie showing of valid and paramount incumbrance and title.*

In grantee's action for breach of warranty of title, deed of trust securing purchase-money notes, and trustee's deed thereunder, regular and valid on their face, *held* to make *prima-facie* showing of a valid and paramount incumbrance and title.

4. COVENANTS. *Refusal to accept offer requiring payment of more than original purchase price did not preclude action for breach of warranty.*

Grantee's refusal to accept remote grantor's offer to convey requiring payment by grantee of more than original purchase money without credit for amounts to which he was entitled did not

preclude grantee from suing grantors for breach of warranty of title by reason of incumbrances.

5. COVENANTS. *Measure of damages for breach of warranty is amount paid with interest.*

The measure of damages for breach of warranty of title is the amount of the purchase price paid with interest.

6. COVENANTS. *Grantee suing remote grantor could not recover value of real estate conveyed to immediate grantor.*

A grantee who conveyed other property to grantor and assumed, grantor's notes to remote grantor was entitled, in action against remote grantor for breach of warranty of title, to amount paid on notes and to cancellation of unpaid notes, but not to value of real estate conveyed to immediate grantor.

---

*Headnote 1. Covenants, 15 C. J., sections 42, 143, 182; 2. Covenants, 15 C. J., section 182; 3. Covenants, 15 C. J., section 218; 4. Covenants, 15 C. J., section 182· (1925 Anno.); 5. Covenants, 15 C. J., sections 233, 223; 6. Covenants, 15 C. J., section 229 (1925 Anno.).

APPEAL from chancery court of Sunflower county.

HON. E. N. THOMAS, Chancellor.

Suit by O. H. Cannon against J. L. Sutton and others. Decree for complainant and defendants appeal. Reversed in part, and affirmed in part.

*Everett & Forman* and *Quinn & Cooper,* for appellant.

We contend that Cannon, cannot maintain this action against the appellant, Sutton, for a number of reasons.

(a) There is no warranty of title in the deed from Sutton to Smith, therefore, Cannon cannot recover of Sutton. The deed from B. F. Dulwebber to the appellant, Sutton, is a warranty deed with conditions subsequent which must be performed before any title can be passed by Sutton. A vendor's lien is retained on the property in the deed, and a provision is made in the deed that a trust deed shall be given on the property to secure the notes mentioned in the deed. All of these facts were well known to Cannon at the time he purchased from Smith. *Myers* v. *Buchanon,* 46 Miss. 397; *Myers* v. *Vinerett,* 70 So. 451.

"Oral testimony establishing actual knowledge of the complainant of the existence of a prior deed or mortgage on the property at the time he purchased is admissible and competent." *Wasson* v. *Conner,* 54 Miss. 351; *Duke* v. *Clarke,* 58 Miss. 465; *Wood* v. *Garnett,* 72 Miss. 78. "One who purchases land knowing the title to be defective buys at his own risk." *Walker* v. *Quigg,* 31 Am. St. Rep. 452; *Roach* v. *Kindt,* 39 Am. Dec. 54.

II.　Then again we say there was no warranty of title, because the deed from Sutton to Smith did not warrant the title as against the vendor's lien and trust deed of Dulwebber, for that deed specifically, refers to the deed from Dulwebber to Sutton.

III.　Next we contend that the appellee voluntarily surrendered the property before his note became due; therefore, he cannot make claim now against either Smith or Sutton.

In *Crisler* v. *Whadley,* 102 Miss. 761, the court says: "Where property is abandoned or surrendered by a mortgagor so that its value might be applied to the indebtedness secured by a trust deed on the property, the mortgagor is thereby estopped from setting up a claim thereafter against the mortgagee. "If this be sound law, then surely after Cannon abandoned the property of his own free will and accord, he cannot now sue his grantors for a breach of their contract, because he did not fulfill his. See also *Lightly* v. *Shorb,* 24 Am. Dec. 334; *Burroughs* v. *Wilkerson,* 31 Miss. 544.

*H. C. Mounger,* for appellee.

I. Jurisdiction. The chancery court did have jurisdiction. *Dwyer* v. *Britton,* 53 Miss. 270, at 278, holds: "But in addition to this legal remedy the covenantee and vendee may bring his plaint in the court of chancery."

Dulwebber had a deed of trust on Cannon's land, given by Sutton, for thirty thousand dollars. Sutton by his

deed warranted Cannon against this. Sutton did not relieve the land of this incumbrance. Dulwebber foreclosed his deed of trust and Cannon lost his land. He lost the title and the seizin of the land. The land was actually sold out under the deed of trust. Sutton made no attempt to protect Cannon. A valid subsisting lien on the land conveyed is a breach of the covenant against encumbrances, etc. 15 C. J. 1272.

The *Congregation of Sisters of Perpetual Adoration* v. *Jans*, 110 Miss. 612, held that taxes were a lien which was embraced in a warranty, and the existence of such a lien was a breach of a general covenant of warranty. "A sale under a prior mortgage is a breach of covenant." *Dwyer* v. *Britton*, 53 Miss. 270, 277; 8 Ency. Pl. and Pr., page 3, 249; 8 Am. and Eng. Ency. Law, p, 128.

It was not necessary for Cannon to wait until he had been removed by the sheriff. He gave up after the land had been advertised, and Sutton refused to do anything. Both Cannon and Sutton were evicted. Cannon was practically and in effect evicted. An eviction was not necessary in order to enable Cannon to sue on his warranty. *Dwyer* v. *Britton*, 53 Miss. 273, 277; See, also, 59 Miss. 323; 50 Miss. 521; 57 Miss. 277; 59 Miss. 323.

Cannon then had a right to sue both Sutton and the Smiths for breach of the warranty. To the same effect is 8 Am. and Eng. Ency. Law, 158.

Argued orally by *F. E. Everett,* for appellant, and *H. C. Mounger,* for appellee.

COOK, J., delivered the opinion of the court.

The appellee, O. H. Cannon, filed a bill in the chancery court of Sunflower county against J. L. Sutton, and B. T. Smith and wife, appellants, whereby he sought to recover damages for a breach of warranty in certain deeds conveying to him a tract of land, with the timber reserved, and also for an accounting for the sum alleged

to be due him by Sutton under a certain logging con-
tract involving the reserved timber on said tract of land,
and from a decree in favor of Cannon this appeal was
prosecuted by the several defendants.

The facts as developed in this record are substantially
as follows: On July 7, 1919, B. F. Dulwebber, the owner
of the Kraetzer-Cured Lumber Company, conveyed to J.
L. Sutton certain land located in Sunflower county, Miss.,
reserving from the conveyance all the timber standing on
the land. The consideration named in the deed was two
thousand dollars cash, and a series of six promissory
notes, aggregating thirty thousand dollars, secured by a
vendor's lien reserved in the deed and by a deed of trust
on the land so conveyed, and the further consideration of
the covenants and agreements to be kept and performed
by the grantee in a certain timber contract of the same
date between the Kraetzer-Cured Lumber Company and
the grantee for the removal of all the timber standing or
located on the lands so conveyed.

On the same day that Sutton purchased this land, he
entered into a contract with the Kraetzer-Cured Lumber
Company to cut and log the timber standing on the land
purchased by him and deliver the same on the Southern
Railway in Mississippi, the contract providing in detail
the method of logging the same and the time and place
of deliveries, and providing, as afterwards modified, for
the payment to Sutton of thirteen dollars per thousand
feet for cutting and hauling the timber, with a hold-back
of two dollars per thousand feet to be applied toward the
discharge of the notes due by Sutton to Dulwebber; the
hold-back to be applied first to the note last maturing,
and then to the note maturing next to the last, the pay-
ments to be applied in this order until the entire indebted-
ness should be discharged.

On July 12, 1919, by warranty deed, J. L. Sutton con-
veyed to B. T. Smith a part of the land which he had
purchased from Dulwebber, for a consideration of eight
thousand three hundred dollars, evidenced by five promis-

sory notes, one maturing on January 1st of each year thereafter until all were paid, and secured by a deed of trust on the land so conveyed; the deed to Smith expressly reserving the timber growing on the land, and providing that all the grantor's rights under the Dulwebber deed and the timber contract with the Kraetzer-Cured Lumber Company were excepted from the warranty.

On October 27, 1919, by warranty deed, B. T. Smith and wife conveyed to the appellee, O. H. Cannon, the land which they had purchased from Sutton, in consideration of the conveyance by Cannon to Smith of a certain house and lot valued at one thousand seven hundred dollars, and the assumption by Cannon of the eight thousand three hundred dollars of notes which Smith owed to Sutton; the timber on the land being specifically excepted from the conveyance to Cannon.

The appellee, Cannon, went into possession of the land purchased by him from Smith, and on January 1, 1920, he paid the first note due by Smith to Sutton; the amount thereof being one thousand, five hundred dollars. In June, 1920, Cannon entered into a contract with Sutton to cut and haul the timber which Dulwebber had reserved and which Sutton had contracted to deliver to the Kraetzer-Cured Lumber Company; the price which Sutton agreed to pay to Cannon for cutting and hauling this timber being thirteen dollars per thousand feet, eleven dollars per thousand to be paid in cash, and two dollars to be applied as a credit on the notes which Smith had given to Sutton for the purchase money of said land and which Cannon had assumed, the contract providing that this two dollars per thousand should be credited to the first note maturing until that had been discharged, and then to the other notes in the order of their maturity. Under this contract Cannon cut and delivered a large quantity of logs for which he received no credit and for which he seeks an accounting in this suit.

The note for six thousand dollars due by Sutton to Dulwebber was not paid, and thereafter Dulwebber adver-

tised the land for sale under his deed of trust. After conferences with Sutton in regard to this indebtedness to Dulwebber, but before the sale of the land under the deed of trust, Cannon abandoned the land, and thereafter the land was sold by the trustee in the deed of trust to Dulwebber. Thereafter this suit was instituted by Cannon against J. L. Sutton and B. T. Smith and wife seeking to recover damages for a breach of the warranty in the deeds from Sutton to Smith and Smith to Cannon, and also to recover the two dollars per thousand feet on the amount of timber delivered under the timber contract between Sutton and Cannon and for which no credit had been given on the notes of Smith to Sutton. Answers were filed by the several defendants, and at the final hearing, after having submitted to a master the matter of finding the amount of timber delivered by Cannon under his contract, the court entered a decree finding that the deeds from Sutton to Smith, and from Smith and his wife to Cannon, were general warranty deeds as to the land conveyed thereby; that Sutton had made default in the payment of the purchase-money notes secured by the deed of trust on said land; that by reason of such default the said Sutton deed of trust was foreclosed, and the land was wholly lost to the said Cannon and the said warranties were thereby broken; and awarded the complainant, Cannon, a decree against all the defendants for the one thousand five hundred dollars paid to Sutton on the Smith note, and one thousand seven hundred dollars, the value of the house and lot conveyed to Smith by Cannon, with interest on these amounts, and also a decree against Sutton alone for two thousand dollars found to be due under the logging contract between Sutton and Cannon.

The appellants first contend that on account of the covenants and agreements in the original deed from Dulwebber to Sutton, of which Cannon had knowledge, and which were referred to in the deeds from Sutton to Smith and Smith to Cannon, there was no warranty of title in the latter deeds.

These several deeds convey by general warranty the land therein described, expressly excepting from these conveyances all the timber growing on the land. The covenants and agreements in reference to the cutting and the removal of the timber related only to the consideration for the sale of the land and the method of paying this consideration. They are in no sense limitations on the warranty of title of the land, and we think the chancellor was correct in holding that these deeds were general warranty deeds as to the land conveyed.

Under section 2817, Code of 1906 (section 2318, Hemingway's Code), the word "warrant" without restrictive words in a conveyance embraces the covenant of freedom from incumbrances, and the fact that the appellee had knowledge of the existence of an incumbrance on the land at the time of his purchase thereof is no defense to the warrantors. The fact that a purchaser has notice of an incumbrance may be the reason for his requiring a covenant within whose scope it is included, and having taken this covenant he has the right to rest in the security afforded thereby, and to demand that the warrantor discharge it at its maturity, and upon his failure to do so the covenantee may either discharge the paramount incumbrance or surrender to the holder thereof and recover of the covenantor for a breach of the warranty.

The next contention of the appellants is that, since the appellee voluntarily gave up the possession of the land at a time when his possession was in no way threatened, he cannot now set up a paramount title. The appellee contracted to pay ten thousand dollars for the tract of land purchased by him, while at the time he surrendered possession thereof, this land, together with other lands, was advertised for sale under a deed of trust to secure purchase-money notes amounting to about twenty-seven thousand dollars. There is evidence to show that the appellee failed in his efforts to have his grantors discharge this incumbrance or in any way protect his title

from this sale. Under the circumstances he had the right
to surrender the possession, assuming thereby, however,
the risk of determining whether the incumbrance was
paramount. But the appellants say that having volun-
tarily surrendered possession of the property to what he
terms a paramount title, the burden was on the appellee
to show that the title to which he surrendered was good
and valid, and that he failed to do so. Under the proof
in this record there is no merit in this contention. At the
time the appellee surrendered possession of the land it
was advertised for sale under a deed of trust given to
secure the purchase money of the land. This sale was
afterwards consummated, and at the trial of this cause
the appellee introduced in evidence the trust deed under
which the land was sold, and also the trustee's deed con-
veying the land to the purchaser at such sale. These in-
struments are regular and valid on their face, and make
a *prima-facie* showing of a valid and paramount incum-
brance and title. There is no evidence whatever in the
record to call in question the validity of this trustee's sale.

The appellants' next contention is that the appellee
cannot maintain this action against them for the reason
that, before the foreclosure of the Sutton deed of trust
by Dulwebber, he offered to carry out the sale to the
appellee on the condition that the appellee would carry
out his agreement to purchase the land. The written
offer of Dulwebber to the appellee was offered in evi-
dence, and from this it appears that Dulwebber offered
to execute a deed to the appellee for a consideration of
six thousand eight hundred dollars, the balance due by
the appellee on the Smith notes which he had assumed,
with interest thereon from July 7, 1919, and also the
payment of an attorney's fee of seventy-five dollars.
This offer took no account whatever of the two thousand
dollars which the appellee had earned under his timber
contract, and which was to be credited on his notes due
to Sutton, and it also required the payment of a larger
sum than the original purchase price which the appellee

had agreed to pay. He was under no obligation to protect his title by the acceptance of an offer requiring the payment of more than the original purchase money, and in addition the sacrifice of the sum due him under the logging contract.

The appellant Sutton next assigns as error the action of the court in awarding a recovery against him for the value of the lot conveyed by the appellee to Smith, amounting to seventeen hundred dollars.

We think this assignment is well taken. The measure of damages for a breach of warranty of title is the amount of the purchase price paid, with interest. The purchase price contracted to be paid to Sutton was eight thousand three hundred dollars of which only fifteen hundred dollars had been paid; the remainder having been assumed by the appellee. As against Sutton, the remote vendor, the appellee was entitled to the cancellation of the unpaid notes, and a recovery of the fifteen hundred dollars paid to Sutton; but we do not think he was entitled to recover the seventeen hundred dollars profit paid to his immediate vendors, Smith and wife.

Having joined in the warranty of title, B. T. Smith and his wife, Emma Smith, are liable to the appellee for seventeen hundred dollars, the value of the house and lot conveyed to them by the appellee, with interest from the date of such conveyance, and they are jointly liable with J. L. Sutton for the fifteen hundred dollars paid to Sutton on the Smith notes, while Sutton only is liable for the two thousand dollars found to be due the appellee under the logging contract.

The decree of the court below will therefore be reversed in so far as it awards a recovery against J. L. Sutton for the item of seventeen hundred dollars and interest thereon; in other respects the decree will be affirmed.

*Reversed in part, and affirmed in part.*