SIMON *v.* WILLIAMS *et al.**

(In Banc.   Oct. 5, 1925.)

[105 So. 487.   No. 24632.]

1. VENDOR AND PURCHASER.   *Vendee not moving promptly may not rescind.*

   Vendee in order to rescind must move promptly after accrual of right; and not acting for two years during which there were radical changes in the situation, including a fifty per cent decline in the land's market value, he loses his right.

2. COVENANTS.   *Breach of covenant against incumbrances held technical, giving no right to damages.*

   Breach of covenant against incumbrances, by reason of presence of deed of trust, is technical, and gives covenantee no right to recover purchase money paid or to damages, he not having extinguished the incumbrance, nor been disturbed thereby, but having lost the land through foreclosure of another mortgage which he had assumed and on which he defaulted.

   ETHRIDGE, J., dissenting.

---

*Headnotes 1.  Vendor and Purchaser, 39 Cyc. p. 1427; 2. Covenants, 15 C. J. Section 109 (Anno).

APPEAL from chancery court of Tunica county.
HON. C. L. LOMAX, Chancellor.

Suit by Joe Simon against Burch Williams and others. Bill dismissed, and complainant appeals.   Affirmed.

*Cutrer & Smith* and *Roberson, Yerger & Cook,* for appellant.

*A vendor who sells property to a vendee, conveying the land with a covenant against encumbrance and with full knowledge on the part of the vendor that the vendee is buying the property for a resale, is liable for the resulting damage, for the failure to make the resale when*

*there is in fact an encumbrance on the property con-veyed, and the vendee by reason and because of this en-cumbrance is prevented from making a resale of the property.* Sisters of Perpetual Adoration v. Jane, 110 Miss. 612; *Caswell* v. *Habberzettle,* 99 Tex. 1, 86 S. W. 738; 122 Am. St. Rep. 597; *Wm. Farrell Lbr. Co.* v. *Deshon,* 65 Ark. 103, 44 S. W. 1036.

So we say in this instant case that a covenant against encumbrance is broken immediately if there is in fact a deed of trust on the property at the time the covenant against encumbrance is entered into. And in the case at bar, there was a deed of trust on the property con-veyed, though a covenant against encumbrance was en-tered into by the grantors; and this covenant was breached by the existence of the deed of trust as soon as it was entered into. If injury, direct, or indirect, resulted from this breach of the covenant, then, the ap-pellees must indemnify the appellant for this injury or damage.

For law in regard to the breach of a covenant against encumbrance see: 11 Cyc. 1164; 15 C. J. 1326, section 230; *Fraser* v. *Bentel,* Ann. Cas. 1913 B. 1062; *Lynch* v. *Wright,* 94 Fed. 704; *Weatherbee* v. *Bennett,* 84 Mass. 428; *Har-low* v. *Thomas,* 15 Pick. 66; *Batchelder* v. *Sturgis,* 3 Cush. 201, 57 Mass. 201.

The measure of damages is the same old measure that has been applied in this state from the earliest case to the present date, and in truth the same measure which has been applied in cases of damages from breach of con-tract from the time of the decision in the case of *Hadley* v. *Braxendale,* on down to the present date. 15 C. J. 1317; 2 Devlin on Real Estate (3rd Ed.), 1720, sec. 917; *Funk* v. *Voneida,* 14 Amer. Dec. (Penn.) 614; *Sutton* v. *Cannon,* 100 So. 24.

II. *The right of Simon to a rescission of the contract because of this encumbrance on same.* Unless there was an unreasonable delay on the part of Simon in asking for a rescission, then most certainly he is entitled to a

rescission of the contract, a cancellation of the deed, and a return of the twenty-two thousand four hundred fifty dollars cash paid by him, together with interest thereon.

It will be borne in mind, always, by this court that this contract between Joe Simon and Burch, and J. D. Williams was not the simple, ordinary contract of bargain and sale, but that it was the case of a purchase of land by a real estate agent for the purpose of resale, with full knowledge on the part of the vendee of the purpose for which the land was being bought. Here, the vendor conveyed an absolutely unmarketable title. The vendor conveyed with full knowledge that it was being bought for a resale. He executed a covenant against encumbrance, knowing that the place was bought for a resale. It was his duty to remove the encumbrance so that the place might be marketable. Failing to do this, the vendee undoubtedly had a right to the rescission of the contract.

We say that there was no unreasonable delay.

*Dulaney & Jaquess,* for appellees.

I. *The appellant was not entitled to a rescission on either the allegations of the bill or the proof. Halls* v. *Thompson,* 1 S. &. M. 443. Appellant has never had a ground for rescission, but here we submit that there is no equitable principle better established than the rule that a party having a ground for rescission must seek rescission promptly upon the discovery of that ground, and may not with such knowledge continue to enjoy the benefits of his trade until the situation is changed. *Alig* v. *Lackey,* 114 Miss. 392, 75 So. 139; *Gannaway* v. *Toler,* 122 Miss. 111; *Shappirio* v. *Goldberg,* 192 U. S. 232, 48 L. Ed. 419; 19 Rose's Notes on U. S. Reports, 25; 5 Pomeroy's Eq. Jur. Prud. (2nd Ed.), 4758, sec. 2109; Note to *Faulkner* v. *Wassmer,* 30 L. R. A. (N. S.) 872; *Fletcher* v. *Wilson,* S. & M. Ch. 376.

Has it ever been held to be the law that one with full knowledge of the facts may enter into a contract, accept

the benefits of the contract, wait to see whether there will be a profit or a loss, and finding that there will be a loss obtain a rescission because of a fact known to him from the first?

II.  *Appellee has shown no right to recover damages for breach of covenant against encumbrances.*  The final contract between the parties was a warranty deed in which nothing was said about a reconveyance, and having contracted in that formal manner they must be presumed to have had in mind the rules of damages adopted by the courts as applicable to that contract in hundreds of cases and since the earliest times of our jurisprudence.

The appellant relies upon the familiar rule of *Hadley* v. *Baxendale,* 9 Exch. 341, that the damages recoverable for a breach of contract are such as may fairly and reasonably be considered as arising naturally from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it.

Can it reasonably be presumed that both parties at the time the deed was delivered contemplated damages arising from a loss of profit on resale, when at the time Simon was accepting the title knowing of the existence of the deed of trust?

Parties adopting a solemn form of contract, often passed upon by the courts, may reasonably be presumed to have had in mind the rules of damages, which the courts have uniformly applied to that contract and no other.  8 R. C. L. 459; *Brown* v. *Chicago, etc., R. Co.,* 54 Wis. 342, 11 N. W. 356, 41 Am. Rep. 41; *Allison* v. *Chandler,* 11 Mich. 542, 17 C. J. 746; Hale on Damages (Hornbook Series) 369.

Note the distinction between damages for breach of covenant against encumbrances when the encumbrance is removable and when it is not removable, for this distinction constitutes a complete answer to all of the au-

thorities cited in regard to purchases for resale. This distinction seems to be recognized by all of the courts and leading textwriters.

There are two kinds of encumbrances recognized by the courts and textwriters. The first class consists of money charges such as judgments, mortgages, attachments, and other liens, which may be discharged by the payment of a sum of money. The second class of encumbrances consists of such as may not be discharged by the payment of a sum of money, and interfere with the enjoyment of the land, such as leases, building restrictions, rights-of-way, and other easements. 2 Sutherland on Damages (2nd Ed.), 2146; Rawle on Covenants' for Title, 271-276; *Delavergne* v. *Norris,* 7 Johns 358 (N. Y.) 5 Am. Dec. 281; *Prescott* v. *Trueman,* 4 Mass. 627, 3 Am. Dec. 246; *Post* v. *Campau,* 42 Mich. 90; *Bailey* v. *Agawam National Bank,* 190 Mass. 20, 76 N. E. 449, 112 Am. St. Rep. 296, at 301.

Having merely a technical cause of action at law for nominal damages, a court of equity will not retain jurisdiction for the sole purpose of awarding nominal damages, and the bill must be dismissed. *Hastings* v. *Hastings,* 58 N. Y. Sup. 416.

The law in Mississippi is not different from that in other states. *Winstead* v. *Davis,* 40 Miss. 785; *Vick* v. *Percy,* 7 S. & M. 256; *Guice* v. *Sellers,* 43 Miss. 52; *Wofford* v. *Ashcraft,* 47 Miss. 641; *Walker* v. *Gilbert,* 7 S. & M. 456, at 464.

No case seems to have been presented to the Mississippi supreme court in which there was a breach of the covenant against encumbrances by virtue of there being an encumbrance of the second class; that is, one which interfered with the use of the land, but the statutory deed has often been before the court in cases where the encumbrance was of the first class; that is, a mere money charge. *Allen* v. *Caffee,* 85 Miss. 766.

It would be a strange result if the court should hold that where one accepts the statutory warranty deed, he

may recover damages where there is an outstanding mortgage, and he has not been evicted and has paid out nothing on this account, but cannot recover damages where there is outstanding an absolute fee-simple title unless he is evicted or pays out something on this account. But we must confess that there is an analogy for this in the English law, which formerly required a man to pay damages when he injured one of his fellows physically, but did not require him to pay anything if his victim was killed. *Bush* v. *Cooper,* 26 Miss. 599.

As illustrative of the holdings of our court see *Kirkpatrick* v. *Miller,* 50 Miss. 521; *Swinney* v. *Cockrell,* 86 Miss. 318; *Allen* v. *Miller,* 99 Miss. 75, 54 So. 831; *Coopwood* v. *McCandless,* 99 Miss. 364, 54 So. 1007; *Congregation of Sisters, etc.* v. *Jane,* 110 Miss. 612, 70 So. 818; *Sutton* v. *Cannon,* 135 Miss. 368, 100 So. 26.

Our court thus plainly states all of the rights and duties of the covenantee and the only circumstances under which he may recover; and these propositions were evidently regarded as so well settled that no citation of authority was required.

Learned counsel for appellant quote and rely upon the negative statement found in 11 Cyc. 1164, and also as an additional authority quote the same statement as brought forward in the latter edition of the same work in 15 C. J. 1326, the latter part of section 230. To support the text only two cases are cited: *Fraser* v. *Bentel,* 161 Cal. 390, 119 Pac. 509, Ann. Cas. 1913 (B) 1062; *Batchelder* v. *Sturgis,* 3 Cush. (Mass.) 201.

We request that the court examine both of these cases. In neither case was a question of loss of profit involved, that point not being reached because the record showed no communication of the intention to resell. In both cases the encumbrance complained of was of the second or permanent class, and not a money charge, as in the case at bar. In both cases there was a distinction between classes of encumbrances recognized, as well as the rule of damages, above set forth by us.

It is evident that Simon's losses resulted solely from the general depreciation in land values, and from his own default in his obligations, and appellees are not responsible for either.

Argued orally by *J. W. Cutrer,* for appellant, and *J. W. Dulaney,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant, Simon, filed his bill in the chancery court of Tunica county against appellees Williams brothers (Burch and J. D. Williams) and J. R. Whisenant to cancel and have surrendered up his purchase-money obligations for certain lands conveyed to him by appellees Williams brothers, known as the Mitchell place, in Tunica county, and to recover back from appellees the sum of twenty-two thousand four hundred fifty dollars, being the purchase money paid by appellant to appellees Williams brothers on said land before the filing of the bill in this cause. The cause was heard on bill, answer, and proofs, and final decree was rendered dismissing appellant's bill, from which appellant prosecutes this appeal.

The gravamen of appellant's bill is that he is entitled to cancel and have set aside his contract for the purchase of the land and recover back the purchase money paid by him because appellees Williams brothers breached the warranty against incumbrances contained in their conveyance of the land to appellant; and that if appellant is not entitled to such cancellation, still he is entitled to recover back the purchase money so paid because of such breach of warranty against incumbrance. The controlling facts in the case are either undisputed or were settled by the finding of facts by the trial court. They are substantially as follows: Mrs. Julia Kyle and her two children owned two plantations in Tunica county consisting of about five hundred acres each; one was known as the Mitchell place and the other as the Ker

place.   On July 19, 1919, Mrs. Kyle and her children conveyed both places to C. V. Moore and S. G. Salter for a consideration of eighty thousand dollars, five thousand dollars of which was paid cash, the purchasers executing their notes for the balance of seventy-five thousand dollars payable annually through a series of years, and gave a deed of trust on the land to secure the same.   On the same day that Moore and Salter bought both places they sold one of them, the Mitchell place, to appellee Whisenant for a consideration of fifty thousand dollars, seven thousand five hundred dollars of which was paid cash and notes executed for the unpaid balance secured by deed of trust on the land.   On the 4th day of October, 1919, appellee Whisenant sold the Mitchell place to appellees Williams brothers for a consideration of seventy-five thousand dollars, of which ten thousand dollars was paid cash, and notes were executed for the balance, sixty-five thousand dollars, secured by a deed of trust on the land.   On the same day that appellees Williams brothers purchased the Mitchell place from appellee Whisenant, they sold and conveyed it to appellant, Simon, in consideration of eighty-seven thousand five hundred dollars of which sum ten thousand dollars was paid cash, and later, but some time before the bill was filed in this cause, twelve thousand four hundred fifty dollars more of the purchase money was paid by appellant.   The balance of sixty-five thousand dollars he agreed to pay by assuming the balance due by appellees Williams brothers on the land to appellee Whisenant, which was exactly that amount, and was evidenced by ten notes for six thousand five hundred dollars each due through a series of years.   In the deed of trust executed by Moore and Salter in favor of Mrs. Kyle and her children to secure the unpaid purchase money of seventy-five thousand dollars for both places, it was provided that when fifty thousand dollars of that amount should be paid, Mrs. Kyle and the children would release either the Mitchell place or the Ker place from the deed of trust,

the one to be released to be designated by Moore and Salter or their assignees. When appellant purchased the Mitchell place it was under a lease to one Roach for two years at a rental of one thousand five hundred dollars a year. Appellant was to have constructive possession on the 1st of January, 1920, and actual possession on the 1st of January, 1922.

The court below found, and the finding was supported by ample evidence, that when appellant bought the Mitchell place he was informed of the existence of the Kyle deed of trust thereon to secure the seventy-five thousand dollars unpaid purchase money notes executed by Moore and Salter to the Kyles. He also knew of the lease of the place for a term of two years to Roach. The deed from appellees Williams brothers to appellant contained the statutory warranty provided for by section 2817, Code of 1906 (section 2318, Hemingway's Code). The statute embraces the five common-law covenants "seizin, power to sell, freedom from incumbrance, quiet enjoyment and warranty of title."

On May 12, 1920, appellant made a contract with Robinson and Yerger to sell them the Mitchell place for the sum of ninety thousand dollars, two thousand dollars of which was to be paid cash, eight thousand dollars on January 1, 1921, and the balance in nine equal installments beginning January 1, 1922. This contract was upon condition that the title was approved by Robinson and Yerger. The examination of the title revealed the seventy-five thousand dollars unsatisfied deed of trust from Moore and Salter to the Kyles. Robinson and Yerger thereupon refused to carry out their contract of purchase. Appellant made efforts to sell the land to others and failed. In December, 1920, appellant entered into an agreement with Roach, who had the place leased for two years, whereby appellant leased the place from Roach for 1921 for two thousand four hundred dollars, agreeing that the amount of Roach's rent note for that year of one thousand five hundred dollars should be credited

thereon. The notes and deed of trust executed by appellee Whisenant were, on March 1, 1920, canceled and surrendered to him in consideration of which he transferred to C. V. Moore and H. L. Moore the notes and deed of trust for sixty-five thousand dollars which had been executed by appellees Williams brothers and assumed by appellant. Appellant made default in the payment of the first of the Williams brothers' notes to the appellee Whisenant so held by the Moores, being for six thousand five hundred dollars, due January 1, 1921, and on February 7, 1921, the deed of trust securing the same was foreclosed for the payment of that note subject to the lien of the deed of trust for the remainder of this series of notes. The property was bought in at foreclosure sale by appellee Whisenant. On October 29, 1921, about two years after appellant purchased the land, and more than a year after he had contracted to sell the place to Robinson and Yerger, and about nine months after the foreclosure sale under the deed of trust to secure an indebtedness which he had assumed the payment of, of which he had made default, appellant filed the bill in this cause. The financial crash of the summer of 1920 had taken place, resulting in the land involved being worth probably less than half of the price at which appellant bought it. Appellant testified and it was not denied, that when he bought the property he stated, and the grantors so understood at the time, that he was buying not as a permanent investment but for resale as soon as he could get a purchaser at a profit.

A vendee of land claiming the right of rescission against his vendor must move promptly after the accrual of such right. If he continues to treat the property as his own awaiting developments before determining whether he will claim rescission, he will not be permitted to rescind. He will not be permitted to experiment with a view of seeing how his purchase will turn out, whether a market goes up or goes down. He must act promptly and within a reasonable time after the

accrual of his right to rescind. 5 Pomeroy Equity Jurisprudence (2d Ed.), section 2109, p. 4758; *Fletcher* v. *Wilson*, Smedes & M. c. 376; *Alig* v. *Lackey*, 114 Miss. 392, 75 So. 139; *Gannaway* v. *Toler*, 122 Miss. 111, 84 So. 129. Applying these principles to the undisputed facts of this case it seems plain that appellant waited too long before asking for rescission. Too many changes had taken place between the time his alleged right of rescission accrued and the time he took action. And those changes were most radical and important to the parties in interest. As stated, one of them was the great financial crash of the summer of 1920, striking down the values of lands in the Delta section of this state one-half or more.

Appellant contends, however, that even though his right of rescission was gone when he filed his bill, still there was a breach of the warranty in his deed against incumbrances in that the land was incumbered with the Kyle deed of trust for seventy-five thousand dollars which appellant's vendors failed and refused to remove. Appellant's position is that except for this incumbrance he would have sold the land to Robinson and Yerger at a profit of five dollars an acre. And the evidence shows that to be true. Robinson and Yerger were ready, able, and willing to carry out their contract of purchase, and would have done so except for the existence of the Kyle deed of trust. The evidence shows without conflict that appellant demanded of his vendors, appellees Williams brothers, that the Kyle incumbrance be removed so that he could make the sale. They proposed after conference with the Kyles and the other parties in interest that if appellant would pay thirty-two thousand five hundred dollars on the Kyle deed of trust, he receiving credit therefor on the unpaid purchase money due by him, the Kyle deed of trust should be released from this land. Appellant was unable to do that. As the result of the existence of the Kyle deed of trust and the failure of appellant's vendors, appellees Williams brothers, to have

the same canceled, the contract of sale between appellant and Robinson and Yerger was abandoned. It should be borne in mind, however, that the foreclosure sale which resulted in appellant losing this land was not under the Kyle deed of trust, but was under the Whisenant deed of trust executed by appellees Williams brothers to appellee Whisenant to secure an indebtedness of sixty-five thousand dollars, the payment of which appellant had assumed as a part of the consideration for the conveyance of the land to him. That indebtedness consisted of ten notes of six thousand five hundred dollars each. Appellant defaulted in the payment of the first one due, and thereupon the foreclosure took place. Appellant's contention is that there was a breach of the covenant of warranty against incumbrances by appellees Williams brothers on account of their failure to remove the lien of the Kyle deed of trust upon his land, resulting in his loss of the sale to Robinson and Yerger at a profit of five dollars per acre. Appellant, however, does not seek to recover the profit he would have made, but seeks to recover the purchase money he had paid on the land, twenty-two thousand four hundred fifty dollars.

In a very large sense the rights and obligations under the law as between covenantor and covenantee under a covenant against incumbrances are the same as those of the covenantor and covenantee under a covenant of title. Numerous cases have been before this court arising out of the latter relation. Under a covenant of warranty of title the established rule in this state is that in order to recover thereon there must have been an eviction, or there must at the time of the purchase of the covenantee have been adverse possession under paramount title holding the covenantee out. *Kirkpatrick* v. *Miller,* 50 Miss. 521. A purchaser of land in possession under a deed containing a covenant of warranty of title cannot avoid the payment of the purchase-money notes for the land by setting up an outstanding title in a stranger. And the representation of the vendor that his title is

good is no more than is stated in more solemn form in the covenant of warranty in his deed; and such a representation, when there is an outstanding title will not enable the vendee in possession to avoid the payment of purchase-money notes. *Winstead* v. *Davis,* 40 Miss. 785. In cases where there is no fraud the purchaser of land in possession cannot have relief in equity from his contract to pay on the ground of a defective title, without previous eviction. Such a purchaser under a deed of warranty has no right to call his vendor into a court of equity to litigate an adverse title. He must rely on his covenant if he should be evicted. *Vick* v. *Percy,* 7 Smedes & M. 256, 45 Am. Dec. 303. In a case free from fraud in which the insolvency of the vendor is not shown it is no defense to a purchase-money note for the conveyance of land with covenants of general warranty that the vendor had no title or a defective title to the land. In such a case the vendees' remedy is upon the covenants of warranty contained in the deed. *Guice* v. *Sellers,* 43 Miss. 52, 5 Am. Rep. 476; *Wofford* v. *Ashcraft,* 47 Miss. 641. Where a purchaser of real estate has protected himself by covenants of warranty he is not entitled to be relieved from his contract if it be unmixed with fraud until after eviction. *Walker* v. *Gilbert,* 7 Smedes & M. 456.

The Kyle deed of trust was not a permanent incumbrance; it was removable. The governing principles where an incumbrance is not removable, such as an easement or other permanent servitude, are different in some material respects from the principles governing removable incumbrances. The principles controlling each class are thus stated in Hale on Damages (Hornbook Series) page 369:

"The measure of damages for breach of a covenant against incumbrances is:

"(a) For a permanent incumbrance, the diminution in the value of the premises due to the incumbrance—

not exceeding, in most states, the consideration paid; in others, not exceeding the value of the land.

"(b)    For incumbrance which causes a total eviction, the consideration with interest and costs in most states, or the value of the land with interest in others; for a partial eviction, a proportionate amount.

"(c)    For a removable incumbrance, the reasonable expense of removing it, not exceeding the consideration or the value of the land."

A vendee suing on a covenant against incumbrances, who has extinguished the incumbrance, is entitled to recover the outlay for such extinction. But if he has not extinguished it but the incumbrance is outstanding, there is a mere technical breach of the covenant, and his damages are but nominal, for he ought not to be permitted to recover the value of an incumbrance on a contingency. He may never be disturbed by it. If he should be permitted to recover the value of the incumbrance, say in the form of a mortgage, the mortgagee might still resort to the mortgagor on his personal obligation and compel him to pay it. If the purchaser feels that the existing incumbrance is inconvenient to him and he does not want to hazard an eviction, he may satisfy the incumbrance and then resort to his covenant. *Delavergne* v. *Norris,* 7 Johns. (N. Y.) 358, 5 Am. Dec. 281; *Prescott* v. *Trueman,* 4 Mass. 627, 3 Am. Dec. 246. Sutherland on Damages at page 2152 states that to be the settled American rule, and that "it appears to be assumed very generally in this country that the mere existence of a money incumbrance upon land is no injury to the purchaser" (page 2178). The rule that nominal damages only are recoverable for a mere technical breach of a covenant against incumbrances is supported "by the entire weight of authority." Rawle on Covenants of Title, p. 270.

Appellant, when he purchased the land as stated, knew of the existence of the Kyle deed of trust. He did not demand of his vendors that it be released from the land

before the conveyance to him was made. Instead, he relied on his covenants of warranty. He was willing, giving his conduct the ordinary and reasonable significance it bears, to run the risk of the Kyle deed of trust being taken care of so that no injury would result to him. Furthermore, he was never disturbed by the Kyle deed of trust. So far as the record discloses, the notes secured thereby were promptly paid as they fell due. The foreclosure was under a deed of trust securing sixty-five thousand dollars with interest, the payment of which appellant has assumed, and foreclosure was not to satisfy the entire indebtedness secured but only the first note of six thousand five hundred dollars. Appellant had defaulted in the payment of that note. That was the cause of the foreclosure. We conclude, therefore, that if there was a breach of the covenant against incumbrances because of the existence of the Kyle deed of trust, it was a mere technical breach; that appellant suffered no injury or damage therefrom, and has no right of recovery for the purchase money paid by him on the land.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I am unable to agree with the majority in this case. I think there is a vital distinction between the purpose of a warranty against incumbrances and warrant of title, and that the fundamental distinction is that the breach of warranty against incumbrance is a personal covenant against the warrantor, while the breach of warranty as to title and quiet enjoyment is a covenant running with the land affecting the possessory interest.

In 11 R. C. L., p. 1134, under the title "Covenants," subheading, "Incumbrances," section 48 reads:

"An incumbrance, within the terms of a covenant against incumbrances, includes every right to or interest in the land to the diminution of the value of the land, but consistent with the passage of the fee for the land. It does not depend for existence upon the extent or

amount of the diminution in value, but extends to cases in which, by reason of the burden, claim, or right, the owner does not acquire complete dominion over the land which the grant apparently gives. Accordingly, an incumbrance is a burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee. And though the burden be only inchoate, if, nevertheless, it is a right which may be enforced against the property and against the will and consent of the owner, in spite of any objection he might make, as such it is a burden on the land depreciative of its value, and hence an incumbrance. The contract to convey free from incumbrances ordinarily has reference to incumbrances of liens actually existing when the contract is executed, or thereafter created, or suffered by the act or default of the vendor.''

In 7 R. C. L., p. 1135, section 49, it is said: *''Nature of Covenant.*—The preponderance of authority establishes the proposition that covenants against incumbrances are merely personal, and do not run with the land; hence, such covenants under this rule are broken, if at all, when made, and whether the covenant in' the deed is express or one implied by law. The covenant against incumbrances is sometimes, however, regarded as one of indemnity, running with the land; and especially if coupled to the covenant for quiet enjoyment, as is usually the case in England.''

In 7 R. C. L., p. 1135, section 50, it is said: ''It is a general rule that a covenant against incumbrances in a deed protects the grantee against every adverse right, interest, or dominion over the land, whether he had notice of such adverse interest or not; and that a covenantor covenants against known as well as unknown defects. Both parties may be in possession of all of the facts. Either or both may believe an incumbrance is not an incumbrance. If the apparent incumbrance turns out to

be real, the seller must answer, unless he excepts the incumbrance from his covenant,'' etc.

The bill in the present case not only prayed for the money paid ·upon the contract, but prayed for relief against both the immediate vendors and Whisenant, who sold to Burch Williams under a warranty also, and against the deed of trust which the appellant assumed and which was foreclosed. The bill also prayed for general relief, and under the prayer for general relief the appellant is entitled to any relief that the facts involved in the case establish and which are alleged in the bill.

So it appears that Whisenant had warranted to Burch Williams that there were no incumbrances against the land, and was obligated under this warranty to acquire the title outstanding in the deed of trust, or to discharge the incumbrance at once.

In 15 C. J., p. 1247, section 63, it is said: ''The covenant against incumbrances is generally regarded as a covenant *in præsenti*, broken if at all as soon as made, and hence, except in those jurisdictions where choses in action are assignable, or where other statutory provisions control, does not run with the land, although this rule has been held not to apply to a covenant to save a husband, his heirs, etc., harmless from any claim of dower on the part of his wife in consideration of a conveyance by the husband of certain property in trust for the use and benefit of the wife; and some courts contend that a covenant against incumbrances, being one of indemnity. runs with the land and passes to a remote grantee notwithstanding it is technically broken upon the execution of the original deed, especially where a manifest intention that it shall operate in future appears, as where it is intimately associated with the covenant for quiet enjoyment or for further assurance,'' etc.

In a case note to *Geiszler* v. *De Graaf*, 166 N. Y. 339, 59 N. E. 993, 82 Am. St. Rep. 659, at page 676 of the Am. St. Rep., it is said under title ''Covenants as to Incumbrances'':

''The great preponderance of authority establishes the proposition that covenants against incumbrances are broken immediately, if at all, are merely personal, and do not run with the land (*Sayre* v. *Sheffield, etc., Coal Co.,* 106 Ala. 440, 18 So. 101; *Logan* v. *Moulder,* 1 Ark. 313, 33 Am. Dec. 338; *Brooks* v. *Moody,* 25 Ark. 452; *Lawrence* v. *Montgomery,* 37 Cal. 183; *Salmon* v. *Vallejo,* 41 Cal. 481, 484; *Mitchell* v. *Warner,* 5 Conn. 497; *Davis* v. *Lyman,* 6 Conn. 249, 258; *Butler* v. *Barnes,* 60 Conn. 170, 21 A. 419 [12 L. R. A. 273]; *Redwine* v. *Brown,* 10 Ga. 311; *Heath* v. *Whidden,* 24 Me. 383; *Tufts* v. *Adams,* 8 Pick. [Mass.] 547; *Clark* v. *Swift,* 3 Metc. [Mass.] 390; *Whitney* v. *Dinsmore,* 6 Cush. [Mass.] 124; *Blondeau* v. *Sheridan,* 81 Mo. 545; *Moore* v. *Merrill,* 17 N. H. 75, 43 Am. Dec. 593; *Morrison* v. *Underwood,* 20 N. H. 369; *Stewart* v. *Drake,* 9 N. J. Law, 139; *Chapman* v. *Holmes,* 10 N. J. Law, 20; *Garrison* v. *Sandford,* 12 N. J. Law, 261; *Carter* v. *Denman,* 23 N. J. Law, 260; *Wilson* v. *Cochran,* 46 Pa. 229; *Funk* v. *Voneida,* 11 Serg. & R. [Miss.] 110, 14 Am. Dec. 617; *Swasey* v. *Brooks,* 30 Vt. 692; *Pillsbury* v. *Mitchell,* 5 Wis. 17; *Fuller* v. *Jillett* [C. C.], 2 F. [30]), whether the covenant in the deed is expressed or one implied by law (*Lawrence* v. *Montgomery,* 37 Cal. 183). A covenant, whether express or implied, that land granted is free from incumbrances, does not run with the land, or pass to an assignee or succeeding grantee. *McPike* v. *Heaton,* 131 Cal. 109, 82 Am. St. Rep. 335, 63 Pac. 179.''

See, also, *Williams* v. *O'Donnell,* 225 Pa. 321, 74 A. 205, 26 L. R. A. (N. S.) 1094, and case note; *Webb* v. *Wheeler,* 80 Neb. 438, 114 N. W. 636, 17 L. R. A. (N. S.) 1178; *Duval* v. *Craig,* 2 Wheat. 45, 4 L. Ed. 180.

In *Sutton* v. *Cannon,* 135 Miss. 368, 100 So. 24, we decided that a covenant of general warranty made one who executed the warranty liable for a breach of warranty by reason of an incumbrance, although the grantee had notice thereof at the time of purchase. It was also decided in this case that the grantee in the deed did not have to

pay out more than the purchase price to discharge an incumbrance or to perfect the title. It was stated in this opinion (135 Miss. 375, 100 So. at page 26), that:

"The fact that a purchaser has notice of an incumbrance may be the reason for his requiring a covenant within whose scope it is included, and having taken this covenant he has the right to rest in the security afforded thereby, and to demand that the warrantor discharge it at its maturity, and upon his failure to do so the covenantee may either discharge the paramount incumbrance or surrender to the holder thereof and recover of the covenantor for a breach of the warranty."

This case did not involve a demand and suit before the maturity of the incumbrances warranted against, and the expression in the opinion that the grantee had the right to demand that the warrantor discharge it "at its maturity" is not a decision that he would have to wait until it matured before bringing an action for a breach. In that case the incumbrance had been matured and foreclosure had thereunder before the suit was brought. It seems clear to me that it is the duty of the person warranting against incumbrance to forthwith remove the incumbrance and certainly to do so on demand of the grantee.

This seems to be clearly indicated in our statute, section 895, Hemingway's Code (section 1168, Code of 1906), wherein it is provided:

"If any person shall sell, barter, or exchange or mortgage, or give deed of trust on, any property, real or personal, which he had before sold, bartered, or exchanged, or obligated himself to sell, barter, or exchange, or which he had mortgaged, or in any manner incumbered, or on which he knows there is a lien of any kind, by contract or by law, without informing the person to whom he so sells, barters, exchanges, or bargains, or mortgages or gives deeds of trust on it, of the exact state of the property as affected by said acts or of the lien or incumbrance thereon, he shall be guilty of obtaining under false pre-

tenses whatever he received from the person dealing with him, and shall, on conviction, be punished therefor, as for obtaining goods under false pretenses.''

And also section 992, Hemingway's Code (section 1262, Code of 1906), making it a misdemeanor, among other things, to sell or dispose of any property upon which there is a lien without the consent of the mortgagee or beneficiary.

In 7 R. C. L., p. 1163, section 78, it is said: ''According to the great weight of authority, the covenant against incumbrances is a covenant as to things existing at the time it is made. If broken at all, it is broken at the moment it is made, and a cause of action then exists which does not pass by force of any conveyance purporting to grant the premises.''

In 7 R. C. L., p. 1180, section 103, it is said: ''The damages under a covenant against incumbrances as distinguished from the other covenants in a warranty deed are a just compensation for the injury actually suffered,'' etc.

It seems to me that these authorities conclusively establish a right of action, and that it was the duty of the court to determine the damage to the complainant resulting from the incumbrance warranted against, and which the defendants refused to remove on notice to do so, and on notice of the fact that the vendee had a resale which could be made only by having the incumbrance removed. In the case before us there was an incumbrance of seventy-five thousand dollars which the complainant had not assumed, plus an incumbrance of sixty-five thousand dollars which he had assumed, amounting altogether to one hundred forty thousand dollars, whereas he had only contracted to pay eighty-seven thousand dollars, of which he had paid a part.

The bill alleges that the property was sold to him on representation that he could make money reselling it, and that he bought it with the distinct knowledge and understanding that he was buying it for resale. I think

that the facts in the record conclusively show that all the parties to all of these transactions knew that the property was being bought for resale or for speculative purposes rather than for purposes of occupation and use. Whisenant, having warranted the title against the incumbrance which existed against it, and which caused the complainant's injury and loss, was in no position to foreclose for default in the payment of the notes which the complainant had assumed. Had the property in fact not been incumbered, complainant would clearly have complied with his contract, would have discharged his obligations, and would have made a profit. The warranty against incumbrances ought to protect the buyer in his right to use the property for procuring loans and other uses consistent with possession, which are most valuable rights. It would sound exceedingly foolish to a man unacquainted with the ancient legal rules that the incumbrance caused no damage. If the rule ever existed, which I do not think it did, it has ceased to meet the conditions of modern life, and certainly ought to be abolished. I think the present decision is the first decision in this state which construes the warranty against incumbrances as it is now construed. The deeds involved in this suit contain five separate and distinct warranties. To have property unincumbered is certainly a desirable and valuable right. If it is incumbered, he is denied one of the greatest uses of his property under modern conditions of society. The loan value of property is one of its chief and most attractive features, and certainly this loan value is completely destroyed where the outstanding incumbrances are not yet due and which the grantee cannot discharge without the consent of the holder. If the rule adopted is a sound rule of legal construction, the legislature certainly ought to change the rule so as to give an immediate right of action for the difference in the value of the property unincumbered and the value with the incumbrance on it.