HARDIN *v.* WEST.

(Division A. Oct. 17, 1932.)

[143 So. 697. No. 29945.]

Creekmore & Creekmore, of Jackson, for appellant.

W. J. Evans, of Calhoun City, and J. H. Ford, of Houston, for appellee.

McGowen, J., delivered the opinion of the court.

Hardin, the appellant, filed a bill in the chancery court seeking to enforce a vendor's lien on certain land in Calhoun county against J. G. West, the appellee. The chancery court dismissed the bill, and sustained in part the cross-bill, from which Hardin prosecuted this appeal.

The vendor's lien sought to be enforced was on four small tracts of land aggregating eighty acres, particularly described, in Calhoun county.

On January 3, 1928, Hardin executed a deed to West reciting a consideration of four thousand five hundred dollars, with two thousand dollars cash and a note for two thousand five hundred dollars due in sixty days from that date. The deed expressly retained a vendor's lien on the lands therein described as security for payment of the note of even date.

The bill was filed October 7, 1930, and prayed that the land be sold and the proceeds applied to the payment of the note, and further that the proceeds from a certain fifty-seven acres of the land be applied in discharging a certain mortgage held by the First Joint Stock Land Bank in New Orleans, Louisiana, and the balance be applied to the payment of the appellee's note.

The appellee, West, filed an answer and cross-bill charging, in substance, that Hardin had agreed to apply the two thousand dollars cash payment in satisfaction of the existing mortgage to the First Joint Stock Land Bank and had not complied with that agreement, and further alleging that on the date of the execution of the deed, there existed a mortgage on the land executed by Hardin to the Grenada Bank, and also one to the Bank of Houston, of both of which West had no knowledge. He knew

of the mortgage to the First Joint Stock Land Bank, but relied on Hardin's promise and agreement to have it canceled within a very short time after the execution of the deed; and alleged that this failure to discharge the mortgage to the Land Bank was a fraud upon him and that he did not get a good title to a major portion of the land conveyed, and was, therefore, entitled to a rescission of the transaction and to recover from Hardin the two thousand dollars cash payment made by West, and that Hardin was insolvent. There was no allegation that West had been evicted from the premises, or that his possession had been disturbed, or that he had ever paid, or offered to pay, his note for two thousand five hundred dollars or any part thereof.

Hardin answered the cross-bill stating that he admitted giving the deeds of trust on the land to the Bank of Houston and the Grenada Bank and the renewals to the Grenada Bank, but claimed that they had been canceled 'of record, and that the inclusion of said land in the renewals to the Grenada Bank was by error; denied that he promised to pay the two thousand dollars to the Land Bank and immediately procured and have recorded a release of the land from the deed of trust held by said bank, or that he misrepresented his title, or that his record title was not fee simple and free from incumbrances other than the deed of trust to the Land Bank, or that he was insolvent.

As this case must be reversed and remanded, we shall not state the facts fully. It is undisputed that at the time West accepted the deed from Hardin, he (West) knew that a mortgage due the Land Bank was on the land, and relied upon Hardin's promise to have the mortgage canceled at a later date.

The two thousand five hundred dollars note which is the basis of this litigation fell due on March 3, 1928. West testified that in February, 1928, he looked at the records

and found the mortgages on the land in favor of the Grenada Bank and the Bank of Houston.

A short time after the due date of the note, Hardin, West, and Edmundson met in the Bank of Derma, where it had been agreed by West and Hardin that the release to be executed by the Land Blank should be delivered, and West's attention was called to that fact by Hardin.

On January 6, 1928, the Grenada Bank executed a release of these lands, requesting the chancery clerk to release same by a writing, duly acknowledged, filed for record on January 28, 1928. It appeared that Hardin, in renewing his deed of trust to the Grenada Bank, included these same lands, and the bank released same as having been included in the deed of trust by mistake.

As to the Bank of Houston's deed of trust, it appears to have been transferred to one Cyrus Foshee by the Bank of Houston prior to January 3, 1928, and that Foshee executed a release by notice to the chancery clerk that these lands had been released from the operation of the deed of trust to the Bank of Houston, assigned to Foshee, which notice was by Foshee sworn to and recorded by the chancery clerk on January 4, 1928.

At the meeting, in the Bank of Derma, between the parties, accompanied by Edmundson, West was apprised of the fact that the release from the Land Blank was then in the Bank of Derma, and Edmundson, at Hardin's instance, offered to lend West the money with which to pay off his note, to which West demurred, because he did not want to incur the expense of drawing up the papers. Hardin offered to pay this expense if West would go ahead and pay the note. Although West knew at the time of the existence of the deeds of trust to the Grenada Bank and Bank of Houston, he made no mention of that fact to Hardin. He does say, however, that he insisted, at various times, that Hardin clear the record. Hardin insists that the Land Bank was to be paid from the proceeds of West's note, and denied that he agreed to pay

the Land Bank the two thousand dollars cash he received.

Some time in 1930, West wrote Hardin a note in which he told him that he (West), on a certain day, would make settlement with Hardin.

The release of the lands executed early in 1928 was permitted to remain in the Bank of Derma at Calhoun City for one year, and then was returned, and the Land Bank again sent this release to the same bank; but the release was not offered in evidence, although Hardin's counsel assured the court that if the release was deemed necessary he would produce it in court in a very short time.

It is quite clear from the entire record that nearly three years elapsed before West demanded a rescission of the contract, and not until he was sued on his note.

It is also clear that, at the time the deed was executed, West, the grantee therein, knew of the deed of trust to the Land Bank, and that it was agreed that said deed of trust should be released at a later date, and that West had never been evicted, and was in possession of the land at the time of the trial. This state of facts is clearly and squarely covered by the case of Stokely v. Cooper, 150 Miss. 143, 116 So. 538, 65 A. L. R. 1137.

Accepting West's version, Hardin did not comply with his oral promise to secure a release from the Land Bank by payment of the cash received by him to it. This did not constitute a fraud, nor can it avail West as a defense to the action on his note.

There was an effort to show that Hardin was insolvent, but his testimony is to the effect that he was entirely solvent.

In the case of Stokely v. Cooper, supra, this court held that: ''Where purchaser of land subject to mortgage accepted vendor's deed containing usual covenant of warranty . . . with full knowledge of outstanding incumbrance against land, she was not entitled to relief

from payment of purchase price evidenced by note secured by deed of trust on land until release of outstanding incumbrance was secured, since by accepting deed with usual covenant of warranty she was remanded to security and protection thereby carved out for herself." See, also, Brown v. Smith, 5 How. (6 Miss.) 387; Wailes v. Cooper, 24 Miss. 208; Wofford v. Ashcraft, 47 Miss. 641, and Simon v. Williams, 140 Miss. 854, 105 So. 487, 44 A. L. R. 402.

We will add that West could not wait nearly three years, until he was sued on the note, to ask for cancellation. According to his testimony, he knew the essential fact early in the year 1928, and took no steps toward rescission except as an answer to suit filed against him. See Simon v. Williams, 140 Miss. 854, 105 So. 487, 44 A. L. R. 402.

It follows from the above announcement that there could not have been a decree of rescission of this contract, and a decree in favor of West on his cross-bill. It further follows that he interposed no defense to the original bill, construing the facts most strongly in his favor.

Some difficulty might arise in a decree because the First Joint Stock Land Bank is not a party to this proceeding; but it fully appears that this objection may be obviated when the case comes on for hearing in the lower court.

When the releases executed by the Grenada Bank and Foshee, the assignee of the Bank of Houston, were offered in evidence, the appellee objected thereto on the specific ground that these releases were not made exhibits to Hardin's answer to the cross-bill. His objection here seems to be that "no entry was made on the margin of the record of the deed of trust as required by statute," section 2155, Code of 1930.

In the first place, it would seem that the objection is technical and not substantial. The written authorization was in the hands of the chancery clerk, and all that would

have been necessary was for the clerk to discharge his duty and make the notation on the margin of the record. But, however this may be, appellee could not object in the lower court on one specific ground, and in this court urge another and different specific objection. See Jackson v. State (Miss.), 140 So. 683.

When the case is remanded to the lower court, in the light of this opinion, the objections urged here on behalf of the appellee as to the title will, likely, disappear.

Reversed and remanded.