GILLESPIE, Presiding Justice:
Sidney F. Beck, Jr. filed a bill in the Equity Division of the County Court of Jackson County to recover on the warranty of a deed because of failure of title to real property. The county court gave Beck a judgment against the defendants, Mrs. Mae Ma-thieu and Mrs. Odette Kuhn, and they appealed to circuit court where the judgment was affirmed. The defendants appealed to this Court.
The essential facts are stated in the light most favorable to the appellee, Beck, for whom the trial court found. This means, in general, that wherever there is a conflict in the evidence we adopt the version most favorable to the appellee. We make this statement at the outset because some of the arguments are based on the appellant’s version of the facts which we must consider as having been rejected by the trier of fact, the county judge.
Beck, the complainant below and appellee here, will be called Beck or complainant, and Mesdames Mathieu and Kuhn, defendants below and appellants here will be called defendants. On March S, 1964, defendants executed and delivered to Beck a warranty deed describing about two and a half acres of land in Jackson County, Mississippi, for a cash consideration of $3,000. The purchase price was paid by Mrs. Mary Daggett, for whom Beck had negotiated in buying the property. The defendants did not know Mrs. Daggett’s identity, but Beck told them he was buying the property for some person other than himself. Immediately after the defendants executed and delivered the deed to Beck he deeded the property to Mrs. Daggett. Some time later Mrs. Daggett and Beck learned that J. S. Delmas claimed the land. The Jackson County Port Authority desired to acquire the property but would not buy it because of Del-mas’ claim. Beck told defendants that he would have to confirm the title and he thereafter filed a confirmation suit on behalf of Mrs. Daggett. Defendants were notified by Beck when the trial would be held and requested them to testify. Before and during the trial Beck told defendants what would happen in the event of a decree adverse to Mrs. Daggett in which event he would have to call on defendants to make good their warranty. Mrs. Mathieu testified in the confirmation trial. Mrs. Kuhn did not because she said she did not know any of the facts. The trial resulted in a decree adjudging Delmas the owner of the land because of adverse possession. Beck then gave Mrs. Daggett a note for the $3,000 purchase price on his warranty to her and called upon defendants on their warranty. They refused to pay and this suit was brought.
Defendants contend that Beck is estopped to claim damages under the warranty because (1) he examined the abstract furnished him by defendants and because he is an attorney knew defendants had no title but told defendants the title was good and acceptable, (2) Beck therefore had knowl *629 edge of the facts, (3) defendants are not lawyers, and (4) defendants acted upon Beck’s advice that the title was good. Defendants also say that they paid Beck a fee of $150 to examine the title and they so testified. Beck said, however, and we must assume the trial court found, that the sum paid him was a commission and that he was not the defendants’ attorney. We find no merit in the argument that Beck is estopped. According to Beck’s testimony, the record title was good but the title failed because of adverse possession of Delmas. Some argument is made that the description in the deed was erroneous, but we fail to see how this could affect liability under the warranty. Defendants do not contend that they had good title to some land other than that described in the deed, and there is no contention that the land defendants showed Beck before the sale was not the land involved in the litigation between Mrs. Dag-gett and Delmas. Beck testified, as stated, that the record title to the land was good and that the sole cause of the failure of Mrs. Daggett’s title was adverse possession by Delmas. Defendants received $3,000 for land they did not own. However innocent they may have been as to the state of title, they cannot rely on the equitable doctrine of estoppel. The undisputed proof shows they gave up nothing of value when they executed the warranty deed to Beck but to the contrary received the cash consideration of $3,000, less the commission.
Defendants next contend that Beck is estopped from bringing the present action against defendants under the doctrine of election of remedies. Defendants say that Beck and his grantee, Mrs. Daggett, had a choice of three remedies (1) stand on the legal title and possession, (2) accept the $3,-000 offered Mrs. Daggett for a quitclaim deed and (3) proceed against defendants on the warranty if and when ousted from the property. Continuing their argument, defendants say that Mrs. Daggett, while in possession, was charged with knowledge that she had no legal title and that she and defendants had not been in possession for the statutory period of ten years; that Mrs. Daggett ought to have remained in possession until her possession ripened into title by adverse possession, and that by her act of filing suit against Delmas for confirmation of title and for damages for slander of title she forced Delmas into court, where he prevailed; that by Mrs. Daggett’s election she destroyed every opportunity defendants had of recovering their investment in the land. This argument is without merit. Knowledge on the part of Beck and his grantee, Mrs. Daggett, that the title was not good (which came to Beck and Mrs. Daggett after the date of the deed to Beck) is immaterial. Sutton v. Cannon, 135 Miss. 368, 100 So. 24 (1924). The statute on warranty of title is Mississippi Code 1942 Annotated, section 843 (1956) which provides that:
The word “warrant” without restrictive words in a conveyance shall have the effect of embracing all of the five covenants known as common law, to wit: seizin, power to sell, freedom from encumbrance, quiet enjoyment and warranty of title.
There can be no question that the title defendants conveyed to Beck failed. Beck and Mrs. Daggett were not required to hold possession until adverse possession gave them title. The defendants warranted that they had title.
Defendants next say that Beck may not recover under the warranty because Mrs. Daggett did not accept the $3,000 offered her for a quitclaim deed either before or soon after Mrs. Daggett filed suit against Delmas to confirm title. Defendants say that the acceptance of this sum would have made both Mrs. Daggett and Beck whole and suit against defendants would have been unnecessary. This offer occurred about a year after the date of the deed to Beck. No case has been cited as authority for the proposition that a grantee must compromise with an adverse claimant to the title or lose the right to sue on the warranty. A rule such as suggested in this assignment *630 of error would defeat the purpose of warranty.
Defendants next argue that they never had notice of the suit Mrs. Daggett filed against Delmas to confirm title. This assignment of error is based upon a mistaken view of the facts. Without considering the necessity of notice to defendants of the pendency of the suit, it is sufficient to state that the proof shows that Beck testified he discussed this suit with defendants before and after it was filed. Mrs. Kuhn admitted that Beck told her the confirmation suit was being prepared to file against Delmas. Mrs. Mathieu testified that she discussed the confirmation suit in Beck’s office before the trial. There is no basis in fact for the contention defendants had no notice of the confirmation suit.
We have carefully considered the two additional assignments of error and find them to be without merit.
We find no reversible error. The cause is affirmed.
Affirmed.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.