SMITH, Justice.
The litigation, out of which the present appeal arose, was initiated by the filing of a bill of complaint by appellant, Raymond L. Davis, against Morgan Holifield, ap-pellee, in the Chancery Court of George County. The bill sought: (1) reformation of a deed, executed by Holifield conveying certain land to Davis, so as to embrace 70 acres instead of 54.2, (2) an injunction restraining Holifield from foreclosing a trust deed, executed by Davis, securing the balance of the purchase money for the land, (3) a money judgment against Holi-field for $47.62, the amount of the ad valorem taxes assessed upon the land for the year 1964, and (4) a decree requiring Holifield to accept, as payment in full of the balance of the purchase money, the sum of $4500 tendered into Court by Davis.
Holifield answered, denied the material allegations of the complaint, and made his *724 answer a cross-bill by which he sought permission to foreclose his purchase money trust deed for the purpose of subjecting the land to the payment of the $4500 purchase money note given by Davis, plus costs, including an attorney’s fee as provided in the note.
The deed sought to be reformed by Davis was executed by Holifield on February 24, 1964. It contained the following granting clause: “I, Morgan Holifield, do by these presents, hereby sell, convey, and warrant unto Raymond L. Davis. * * * ”
The pertinent portion of the land description as it appears in the deed is as follows:
“SECTION 24: All land South of a county road known as Old River Road running in a Northwesterly Southeasterly direction of Lot No. 3 of Section 24, Township 3 South, Range 7 West.”
“The land hereinabove conveyed is estimated to contain seventy acres whether it actually comprises more or less.”
Under the provisions of Mississippi Code Annotated section 845 (1956), the words of the granting clause made the conveyance a deed of general warranty, and imported the five common law warranties, i. e., seisin, power to sell, freedom from encumbrance, quiet enjoyment, and warranty of title.
The circumstances which led to the execution of the deed follow.
Holifield owned Lot 3, referred to in the description, and decided to sell that portion of it which lay south of the Old River Road. To that end, in January or February 1964, he posted upon the property a sign advertising it for sale.
One Tucker, who was a cousin of appellant Davis, and who was a pilot of a fishing boat operated by Davis, saw the sign and contacted Holifield about purchasing the land. He was shown the land by Holifield and informed that the asking price was $13,000. Tucker decided not to buy the land but brought it to the attention of his cousin, the appellant, Raymond L. Davis. Davis contacted Holifield with reference to purchasing the property. He asked Holifield to sell him the entire lot, that is, not only that part south of Old River Road, but that part north of the road as well. Holifield declined to sell anything north of the road, and made it clear that only that portion of the lot lying south of the road was for sale. There ensued some two or three conferences between Davis and Holifield with reference to the purchase and sale of the land. In the course of these negotiations, Davis succeeded in persuading Holifield to reduce the price from $13,000 to $11,500. At that figure, the deal was closed and the deed executed. Davis paid Holifield $7,000 in cash, and gave him a note for the balance of $4500, secured by a second mortgage upon the property. Davis does not contend that he was mistaken as to the lines and corners of the tract, or that there was any misrepresentation as to its boundaries. He understood that he was buying only the land south of the road which was under fence. Davis testified that prior to purchasing the land he “walked the fences” but “not all the way.” He said he went back subsequently and “walked the land lines” at the corners. He stated repeatedly that he was never told he was to acquire any part of the land lying north of the road. At one point, he testified:
“Q. At any time did you think you were buying anything north of the road, had anybody led you to believe you were buying anything north of the road?
A. No.”
Davis testified further:
“ * * * the land I was buying was south of the Old River Road which runs through the property, and Mr. Hurt asked how many acres were being conveyed and Mr. Holifield said 70, I believe right at 70 is the words he said.”
*725 Tucker, who had brought the land to Davis’ attention, testified as a witness for Davis:
“ * * * he (Holifield) showed us ■(Tucker and Davis) the lines, the fence lines were the boundaries of what he wanted to sell, it was under fence.”
He also stated that Holifield had not been willing to sell, and expressly refused to ■sell, any of the land lying north of the road. None of the land lying north of the road was fenced.
The land had some improvements on it, including two houses and a small barn. At least one of the houses was occupied and in use, but in poor condition.
The evidence is without substantial conflict except as to the representation, alleged by Davis to have been made to him by Holifield, that the tract contained approximately 70 acres. Davis asserts the representation was made, Holifield denies that it was made. In any event there is no dispute as to what tract was intended by Holifield to be sold, and by Davis to be purchased. The conflict relates solely to the number of acres enclosed within the agreed boundaries.
Davis testified that Holifield said the property contained approximately 70 acres. Holifield denied this, and stated: “We talked about that part of the land south of the Old River Road which was under fence.” Holifield was asked, “Who was it that did this ?” And he answered, “Me and Mr. Davis.”
Holifield was further questioned as follows :
“Q. How many times did you do this?
A. Twice.
Q. Before the sale?
A. Before we sold.”
The substance of Davis’ complaint, as set out in his bill, is that he was told by Holifield that the property comprised about 70 acres. Holifield had never had it surveyed.
Davis first became dissatisfied in November 1964, some eight months after he had gone into possession, when he was told by one Robbin that there were only about SS acres in the tract. Davis then had the property surveyed. His survey showed that there were 54.2 acres south of the road. Davis demanded of Holifield that he convey to him enough land north of the road to make up a total of 70 acres. This Holifield declined to do. Davis then informed Holifield that he would not pay the balance of the $4500 as evidenced by the purchase money note, but would only pay for 54.2 acres, at a per acre price figured on the basis of 70 acres at $11,500. Holifield refused to accept this proposition and returned a check for $2500 tendered to him by Davis on November 28, 1964, as payment in full of the $4500 note.
Davis admitted that when he first approached Holifield on this subject that Holi-field told him that if he was unhappy with the transaction that his money would be refunded upon reconveyance of the land. Davis would not agree to this.
Davis testified in part as follows:
“Q. At that time did he (Holifield) propose to you if you weren’t happy he would give your money back didn’t he say that?
A. Correct, he said he had a man that would pay him more money than I was paying.
Q. You didn’t want to do that?
A. No.
Q. What did you tell him?
A. I told Mr. Holifield if he would give me a deed to the, rest of the property I was supposed to buy that I would pay the rest I owed and if he didn’t want to sell any of that across the road I would prorate it and I would pay him for what I received, 54.2 acres, and he ■ wasn’t agreeable to that then.”
*726 The $4500 purchase money note was due December 1, 1964. In January 1965, Davis having expressly refused to pay the note, Holifield turned it over to his attorney for collection. This attorney addressed a letter to Davis demanding payment, plus twenty percentum as attorney’s fee, as provided in the note. Davis had already employed an attorney to bring the present suit. In preparing for the suit, an investigation of the record title was made by the attorney for Davis. As a result of this search, Davis seeks to justify his refusal to pay the $4500 note when due, by asserting that there had been certain breaches of the warranty contained in his deed.
The deed to Davis reserved to the grantor an interest in all oil, gas and other minerals, reciting that it was the intention of the grantor to convey “an undivided one-half interest” in whatever interest he now owns in such “oil, gas and other minerals * * said grantor reserving unto himself one-half of all mineral interest he now owns in the land.”
In the course of the record search made by Davis’ attorney preparatory to bringing suit, it was discovered that a “Producer’s 88” oil, gas and mineral lease, dated November 9, 1955, executed by Holifield, had not been cancelled of record. The existence of this document was alleged to be a breach of warranty. The primary term of the lease expired November 9, 1965, but it was not shown that it had been kept in force during the term from year to year by payment of delay rentals or otherwise. In addition, a formal cancellation of this lease was obtained on April 13, 1965, and duly filed for record on April 15,1965.
It was not contended that there had been any activity by lessee directed toward the exploration for, or production of, oil, gas or other minerals, or that anything was done under the lease which interfered with or prejudiced Davis in any way.
It was also discovered that the record title to approximately one acre of land south of the road was vested in one Lonnie Creel. This also was assigned as a breach, of warranty. But prior to the trial of the-case, a deed from Creel and his wife to* Morgan Holifield, conveying the one acre-in question and executed May 23, 1946, was. produced by Holifield and duly filed for record. Creel neither claimed nor asserted any right, title or interest in or to any part of this land adverse to Davis. The purpose, of recording is to give notice to third parties dealing with the land. The conveyance-from the Creels to Holifield was effective, as between them and Holifield and Holi-field’s grantee, Davis, without recording.
The third alleged breach of warranty, assigned by Davis, is that the ad valorem taxes-for the year 1964 became a lien upon the-land in January 1964, and were a lien thereon on February 24, 1964, the date of Holi-field’s deed to him, although such taxes-were neither due nor payable until December of that year. The only provision in the-deed referring to taxes was the following:
“The undersigned grantor does by these: presents hereby covenant, agree, obligate- and bind himself to pay and discharge all state and county ad valorem taxes chargeable against said land for the year 1963.”'
Holifield paid these taxes. But when the-taxes for 1964 became payable in December 1964, Davis insisted that they be paid by Holifield under the warranty. Holifield was willing to pay a proportionate part of' $47.62, the amount of the taxes, but said, that the remainder should be paid by Davis.. This dispute was finally resolved by the-court when Holifield was directed to pay, and did pay, these taxes.
There is a great deal of testimony in the-record, but it is undisputed that no representation was ever made to Davis that he was to acquire any land north of the road. He was shown the boundary fences and' was thoroughly familiar with the tract of land which he was to acquire. The only dispute in the testimony is between Davis and Holifield as to whether or not Holifield *727 represented to Davis that the tract contained approximately 70 acres.
At the conclusion of the trial, the Chancellor found that Davis had been upon the land on two occasions, that he had been •shown the property lines and the corners of the property, that he purchased the land in gross, as shown to him, and that acreage was not a factor in the purchase. He further found that neither the oil, gas and mineral lease, nor Holifield’s failure to record the Creel deed, constituted an actionable "breach of the warranty contained in the ■deed. The Chancellor held that Davis was •not entitled to the relief sought by his bill ■of complaint and dismissed it with final prejudice.
The Chancellor then found that Holifield, .as cross-complainant, was entitled to foreclose the deed of trust securing the unpaid $4500 balance of the purchase money due Rim by Davis for the land. He further held that there was due, in addition to the principal amount of $4500, the twenty percentum .attorney’s fee provided for under the terms ■of the note.
On appeal here, Davis has assigned as error the action of the trial court in holding that there had been no breach of warranty which would justify his refusal to pay the note, and that it was error, in any event, to allow the attorney’s fee as provided in the note. He assigns as error the dismissal of his original bill of complaint and the failure of the trial court to (1) reform the deed so as to include 70 acres; (2) hold that the $4500 paid into court by Davis constituted payment in full of all amounts due by him; and, (3) hold that appellee was not entitled to recover the attorney’s fee because appel-lee was liable for payment of the 1964 taxes ■“levied against the subject lands,” and had not paid such taxes at the time of suit.
Finally, it is assigned as error, that the court declined to restrain foreclosure of the trust deed and granted Holifield the relief sought by his cross-bill.
The Chancellor correctly held that neither the apparent existence of the oil, gas and mineral lease, nor the apparent adverse ownership of approximately one acre of the land, under the circumstances in evidence, constituted an actionable breach of the covenants of warranty contained in the deed.
 The courts, with few exceptions, have held that the mere existence of a paramount title, which has never been asserted, cannot amount to a breach of a general covenant of warranty. To constitute a breach of the covenant of warranty, which will enable the covenantee to bring suit against the covenantor, there must have been some hostile assertion of title paramount to the estate or interest which the covenantor undertook to convey, to which possession was yielded or which was taken over. Stanton v. Henry, 130 Miss. 372, 94 So. 237 (1922); Coopwood v. McCandless, 99 Miss. 364, 54 So. 1007 (1911); Green v. Irving, 54 Miss. 450 (1877); 14 Am.Jur. Covenants, Conditions and Restrictions § 535 (1938); Annot., 172 A.L.R. 18 (1948).
In the present case, if the lessee had any interest under the oil, gas and mineral lease, which is doubtful, it was never asserted prior to the filing of the formal cancellation of the lease. Likewise, the ostensible adverse ownership of an acre of the land by Creel was only apparent, the acre having been conveyed by Creel and his wife to Holifield several years before the inception of the present suit. Actually, Creel owned no part of the land and the hiatus in the record chain of title resulted from a failure to record Creel’s deed.
As to the taxes for the year 1964, it is true that these taxes were paid by Holifield only after he was ordered by the court to pay them. There was no advertisement or sale of the land for these taxes, and the failure of Holifield to pay them promptly was not the occasion of any injury to Davis. When the taxes became due, Davis would have been entitled to pay them himself, and to offset the amount paid against the note. *728 But he did not do this, and the circumstances appearing in the record did not justify Davis in refusing to pay the note. See, Hardin v. West, 163 Miss. 839, 143 So. 697 (1932); Stokely v. Cooper, 150 Miss. 143, 116 So. 538 (1928); Simon v. Williams, 140 Miss. 854, 105 So. 487, 44 A.L.R. 402 (1925); Martin v. Partee, 121 Miss. 482, 83 So. 673 (1920); Swinney v. Cockrell, 86 Miss. 318, 38 So. 353 (1905).
In Wofford v. Ashcraft, 47 Miss. 641 (1873), this Court said:
“ * * * If the vendor has practiced no fraud or deceit, a court of equity will not relieve from the contract to pay the price, on the ground of a defect of title, unless there has been an eviction. * * * ” 47 Miss. at 645.
. A fair construction of the testimony for both sides, relating to the question of what land was intended to be purchased and conveyed, shows conclusively that it was thoroughly understood that it was only that part of Lot 3 lying south of the road. It was under fence, and Davis had walked the fences and had been shown the corners. The only conflict in the evidence as (o this relates to whether or not Holifield represented to Davis that this part of the tract comprised 70 acres.
The description contained in the deed falls within the same category as that reviewed by the Court in Miles v. Collinsville Methodist Church, 46 So.2d 110 (Miss.1950). There this Court said:
“ * * * And, of course, the metes and bounds description would control over the estimate of the acreage in determining what land was conveyed by the deed.” 46 So.2d at 111.
See 11 C.J.S. Boundaries § 54 (1938).
Here, when Davis had the land surveyed and complained to Holifield that it did not contain 70 acres, Holifield offered to rescind the whole transaction. Davis declined to accept this offer, and demanded that there be conveyed to him a sufficient number of acres lying north of the road to make a total of 70 acres in all.
It is clear that the Chancellor rejected' Davis’ claim that Holifield represented to him that he was to get 70 acres, and it does-not appear that he was manifestly wrong in so doing.
The great weight of the evidence-supports the Chancellor’s finding that the-land was not sold upon an acreage basis,, that Davis had thoroughly acquainted himself with its corners and boundaries prior to-the sale, and that Holifield had expressly refused to sell Davis any land north of the-road.
Affirmed.
GILLESPIE, P. J., and RODGERS,. JONES, and BRADY, JJ., concur.